48875. SIMS et al. v. AMERICAN CASUALTY COMPANY et al.

462

Argued January 16, 1974 — Decided March 15, 1974 — Rehearing denied March 29, 1974 —

*Shoob, McLain & Jessee, C. James Jessee, Jr., George E. Duncan, Jr.,* for appellants.

*Gambrell, Russell, Killorin, Wade & Forbes, Edward W. Killorin, Richard L. Stumm, Henning, Chambers & Mabry, E. Speer Mabry, Walter B. McClelland, Lokey & Bowden, Glenn Frick, Greene, Buckley, DeRieux & Jones, Hugh Robinson, Troutman, Sanders, Lockerman & Ashmore, Robert L. Pennington, Ezra Cohen, Powell, Goldstein, Frazer & Murphy, Randall L. Hughes, J. Patrick Conney, Frank Love, Jr., James C. Rawls, Swift, Currie, McGhee & Hiers, George W. Hart, Long, Weinberg, Ansley & Wheeler, Charles M. Goetz, Jr., Neely, Freeman*

*& Hawkins, Albert H. Parnell, A. Ed Lane,* for appellees.

HALL, Presiding Judge.

This appeal presents two basic issues, one procedural and one substantive, both of which are matters of first impression in Georgia. The substantive point concerns whether an insurance company carrying a policy other than a workmen's compensation coverage policy on an employer may incur common law tort liability to insured's employees for negligence in the performance of safety inspections which the insurer may make either gratuitously or pursuant to a policy provision allowing or requiring them. The procedural issue concerns the circumstances under which parties defendant may be named and served in a previously-filed action designating them as "Does," when the applicable statute of limitation has expired after the filing of the suit but before they are sought to be substituted for "Does."

### 1. Facts.

Appellant here (hereinafter referred to as "plaintiff"), is Cleo W. Sims, the mother of Stanley A. Sims, deceased, who individually and in her capacity as administratrix of the estate of Stanley A. Sims brought suit in five counts against 18 insurance companies identified by name, additionally designating other prospective defendants by fictitious names pursuant to Code Ann. § 81A-110 (a). The suit arose out of Sims' death during his employment by Bio-Lab, Inc., in Decatur, Georgia. The fictitious defendants were not identified and were not served within the period of the statute of limitation on wrongful death. It is alleged that Sims' work duties involved adding chemicals through a "manhole" to a pressurized chemical reactor midway in the production of a substance known as S-400, a volatile alcohol based product, and that on September 11, 1969, the day in question, the chemical ignited and engulfed him. He died of these injuries on September 17, 1969. The death was compensated under the Workmen's Compensation Act.

Plaintiff's complaint alleged that defendants (including the fictitious defendants) were the boiler, fire,

pressure vessel, and liability insurance carriers for Bio-Lab, Inc. American Casualty Company was the workmen's compensation carrier, and it was alleged to have issued other policies as well. The complaint was brought on the theory that defendants had negligently performed safety inspections of the premises including the area where Sims was fatally injured, and that the death of Sims resulted from defendants' negligence. Count 1 was for wrongful death; Count 2 was for deceased's pain and suffering; Counts 3, 4 and 5 were for wrongful death and pain and suffering against fewer than all defendants.

Subsequently, several months after the two-year statute of limitation from wrongful death had run (Code Ann. § 3-1004) plaintiff filed the first amendment to her complaint seeking to substitute numerous companies for the "John Doe" and other fictitious entities named in the first complaint. The various defendants moved for summary judgment and for dismissal for failure to state a claim. On June 4, 1973, the trial court heard argument on various outstanding motions, and entered an order dismissing on the basis of the statute of limitation the wrongful death portions of Counts 1 and 5 as against the entities sought to be substituted for the fictitious defendants. Plaintiff enumerates as error the entry of this order. Subsequently, for simplicity, the defendants benefiting from this dismissal order will be referred to as the "Enumeration Two defendants," and they are Providence Washington Insurance Co.; Hartford Fire Insurance Company; Employers Surplus Lines Insurance Company; Pacific Indemnity Company; United States Fire Insurance Company; Aetna Insurance Company[1]; American International Insurance Company a/k/a and successor to Pacific Insurance Company; Continental Insurance Company, a/k/a Glens Falls Insurance

---

[1]For resolution of the dispute concerning whether an appeal was taken from the order as it concerned Aetna Insurance Company and Gulf Insurance Company, see Part 7 infra.

Company; Kansas City Fire and Marine Insurance Company; Commercial Union Insurance Company[2]; Michigan Mutual Insurance Company; American Home Assurance Company; and Gulf Insurance Company.[3]

Also at the hearing, the individual motions of a number of defendants for summary judgment were granted without opposition from plaintiff, and no appeal is taken from those rulings. Additionally, the court heard argument by all defendants that the petition failed to state a claim for relief, but deferred ruling on that point. A few days after the hearing, plaintiff filed a second amendment to her complaint to delete Counts 3, 4 and 5, to add a new 3 and 4, and to amend Counts 1 and 2 by supplementation. Basically, the new Counts 3 and 4 repeated the crucial allegations of 1 and 2 and sought recovery in each count for wrongful death and pain and suffering.

Subsequently, the trial court entered an order[4] dismissing the petition[5] in its entirety as to all remaining defendants, and plaintiff enumerates as her first error the entry of this order. The defendants remaining in the lawsuit at that point and affected by the dismissal, were Aetna Insurance Company; American Casualty Company; American Home Assurance Company; American International Insurance Company a/k/a and successor to Pacific Insurance Company; Continental Insurance Company a/k/a and successor to Pacific Insurance Company; Continental Insurance Company a/k/a and successor to Glens Falls Insurance Company; Continental Insurance Company a/k/a and successor to

---

[2]The record suggests and we will assume that this entity is the same referred to elsewhere as Employers Commercial Insurance Company.

[3]See Note 1, supra.

[4]For resolution of the dispute whether this was the grant of summary judgment or of a motion to dismiss, see Part 3, infra.

[5]For resolution of the issue whether the petition to which the order referred was the petition as amended by the second amendment, see Part 2, infra.

Kansas City Fire & Marine Insurance Company; Continental Insurance Company a/k/a and successor to American International Insurance Company; Employers Commercial Union Insurance Company of America[6]; Employers Surplus Lines Insurance Company; Fireman's Fund Insurance Company; Gulf Insurance Company; Hartford Fire Insurance Company; Highlands Insurance Company; Michigan Mutual Liability; Pacific Indemnity Company; Providence Washington Insurance Company; and United States Fire Insurance Company. These entities will be referred to as the "Enumeration One defendants."

As her third enumeration, plaintiff argues that if the order of the trial judge is construed as a motion for summary judgment, it was error to enter the same without first granting various discovery motions of plaintiff.

In order to decide the issue presented by the first enumeration, we must first decide whether the complaint which was adjudicated was the complaint as amended the second time, or whether the second amendment was not properly filed. We must then decide whether the action of the trial court was the grant of the Enumeration One defendants' motions to dismiss for failure to state a claim, or whether it was the grant of summary judgment.

2. What was the Status of the Complaint Dismissed?

Turning to the first of these problems, plaintiff's second amendment to complaint was filed after the motion hearing but prior to the trial court's order dismissing the petitions as to all defendants. Providence Washington urges that this amendment is not permissible under Code Ann. § 81A-115 (a) without leave of court or consent of adverse parties, because the motion hearing should be construed as the equivalent of a pre-trial order. This argument is not persuasive. No pre-trial order within the meaning of Code Ann. § 81A-116 has been entered here, and plaintiff was free to amend as a matter of course. Thus, the complaint the sufficiency of which we here consider, is the complaint as amended the second time, which alleges in pertinent part that the defendants made safety inspections of the plant including

[6]See Note 2, supra.

the room and vat in which the ignition of vapors occurred and that such were made pursuant to the insurance policies *and* as a service performed independently of any contract; that the inspections were made not only to rate the risk but to help Bio-Lab reduce its accidents and losses and to protect the lives, health and safety of its employees; that inspections were not made with reasonable care and skill; that Bio-Lab relied upon defendants to inspect; and that plaintiffs' deceased was injured and killed as a result of defendants' negligence.

### 3. Motion to Dismiss or Summary Judgment?

On the second of these initial problems, we decide that the trial court clearly intended to grant motions to dismiss, and not to grant motions for summary judgment.

It is true, as defendants allege, that a wealth of documentary evidence including affidavits was before the court at the time of the hearing, and that counsel for various parties argued to the court facts supporting pending motions for summary judgment. However, our review of the transcript of the hearing leaves us entirely convinced that the trial judge was aware of, and spoke to counsel of, his intent to decide first whether the petition stated a claim for relief, so that a decision adverse to plaintiff could provide a crisp issue for plaintiff's appeal. Pending his decision, he granted a moratorium on further discovery. It was his expressed intent, in the event that he did find a claim for relief stated, to proceed later to rule on the outstanding motions for summary judgment. The hearing was concluded on the basis of this understanding, and the order the trial court subsequently entered read in its entirety as follows:

"The within and foregoing case coming on to be heard before me on Motion to Dismiss made by the Defendants, and after hearing argument of counsel, It is Hereby Considered, Ordered and Adjudged that the aforesaid motion be and the same is hereby sustained and the petition is dismissed. And It is so Ordered. This 27th day of June, 1973."

Against the background stated above, it is inescapable that the motion granted was the motion of all defendants to dismiss for failure to state a claim. (An additional effect of this decision is that we need not

address further discussion to Enumeration 3.)

The resolution of these initial matters produces for our further inquiry the question whether the complaint as amended the second time states a claim on which relief may be granted.

### 4. Does a Cause of Action Exist?

No party has cited to us a statute imposing liability for negligent performance of safety inspections, and we know of none. Therefore, we address ourselves first to the question whether at common law these defendants, assuming they performed safety inspections, owed any common law duty to the deceased for the negligent performance of which they will be liable in tort.

It must be remembered that neither duty nor negligence exists in a vacuum — they are entirely dependent upon circumstances involving others or their property. "Certain duties are inherent in human society. A owes B the duty to so handle his affairs or conduct his business and control the material forces with which he deals as not to injure the person or the property of B. A violation of this duty is a wrong which may support an action for damages. [Citation.] Negligence itself is a failure to exercise the degree of care demanded by the circumstances." *Newill v. Atlanta Gas Light,* 48 Ga. App. 226, 228 (172 SE 232). With reference to foreseeability of injury, "The correct rule is that in order for a party to be held liable for negligence, it is not necessary that he should have been able to anticipate the particular consequences which ensued. It is sufficient if, in ordinary prudence, he might have foreseen that some injury would result from his act or omission, and that consequences of a generally injurious nature might result." *Emory University v. Lee,* 97 Ga. App. 680, 691 (104 SE2d 234). "The most common test of negligence is whether the consequences of the alleged wrongful act are reasonably to be foreseen as injurious to others coming within the range of such acts." *Thomas v. Williams,* 105 Ga. App. 321 326 (124 SE2d 409).

In the case at bar, assuming the truth of plaintiff's allegations that defendants negligently performed safety inspections of Bio-Lab's hazardous chemical operations, it would immediately appear from these general

authorities that in the circumstances injury would be foreseeable, that deceased was well within the risk, and therefore that a duty of care was owed to deceased for breach of which defendants will be liable in tort. However, the general rules enunciated above were written in cases presenting other questions. Our inquiry must focus specifically upon whether common law tort liability in Georgia may arise from a negligent safety inspection of premises. As we will see, it may.

In *Southeastern Elevator Co. v. Phelps,* 70 Ga. App. 331 (28 SE2d 85), plaintiff brought suit against an elevator company and its partners for the personal injuries incurred when at her place of employment she opened the door into the elevator and fell into the shaft because the elevator was not at her floor. She alleged that the mechanism which would prevent the door's opening when the elevator was not in place had become defective; that it was defective when defendants' agent inspected it pursuant to their contract with her employer to inspect and repair; and that their negligent performance of those duties proximately caused her injuries. This court ruled that the defendants' duty ran not only to the employer, but also to its employees, and the plaintiff had stated a cause of action. The court did not elucidate further the theory upon which such result was based, thus making of this decision a part of our state's common law of tort, recognizing a cause of action in one within the area of risk from negligent performance of a contracted-for inspection duty. This holding was consistent with the earlier ruling in *Higgins v. Otis Elevator Co.,* 69 Ga. App. 584 (26 SE2d 380), recognizing (again, with respect to an alleged negligent defect in an elevator causing a fire) that where there is a continuous duty of inspection upon an independent contractor after turning work over to a building owner, the existence of the inspection duty will defeat the usual rule of non-liability of the contractor following the owner's acceptance.

In *Womack v. Central Georgia Gas Co.,* 85 Ga. App. 799 (70 SE2d 398), the gas company's agents, failing to find a complained-of gas leak, assured plaintiff that no leak existed, whereupon he subsequently lighted a match and was injured in the ensuing explosion. This court ruled

that plaintiff's complaint stated a cause of action, ruling in effect that when plaintiff rightfully relies upon the representations of one who made an inspection, the inspector will he held to the standard of due care, and more so "as to a thing which is subtle, violent, and dangerous, such as gas or electricity." Id., p. 803. Thus, failure to inform of discoverable dangers on the inspected premises may give rise to tort liability in Georgia. It is well established in other jurisdictions also that a common law tort action may lie for the negligent performance of premises inspections of various kinds, and that the duty extends to those persons known and unknown within the area of the risk. See Annot., 6 ALR2d 284 (1949). The following cases discuss this rule in a context other than that of a suit brought by an injured employee against his employer's insurance carrier.

In Hartford Steam Boiler Inspection & Ins. Co. v. Pabst Brewing Co., 201 F 617 (7th Cir. 1912), the insured, Pabst, sued its insurance company for boiler explosion property damage, alleging negligent inspections. The court held that although the policy provision allowing such inspections created no duty to the insured to make them, a duty may arise from a course of dealing including the actual making of inspections and reports attended by insured's reliance thereupon, and entirely outside the contract made by its policy the insurer could become liable for negligence in discharging this duty.

Van Winkle v. American Steam Boiler Ins. Co., 52 N. J. L. 240 (19 A 472) (1890) involved a claim for property damage brought by a property owner adjacent to insured, after suffering damage from insured's exploding boiler. The adjacent owner, Van Winkle, sued the insurer, obviously grounding his case in tort as he was a stranger to the insurance contract. The court held that the insurer's repeated inspections and certification of a safe load to put upon the safety valve raised a duty upon the insurer to make careful inspections. The court also noted that there was a "broader ground" for the decision, which was "that in all cases in which any person undertakes the performance of an act, which, if not done with care and skill, will be highly dangerous to the persons or lives of one or more persons, known or

unknown, the law, ipso facto, imposes, as a public duty, the obligation to exercise such care and skill."

In Hill v. United States Fidelity &c. Co., 428 F2d 112 (5th Cir. 1970), suit was brought by a hotel guest against an insurance company periodically performing safety inspections and the trial court dismissed the complaint on the theory that no legal duty was owed the guest. The Fifth Circuit reversed, finding that a legal duty was owed under the applicable state law (Florida).

The specific question of the duty owed by an insurance company performing such inspections has not been adjudicated in Georgia, but the question has been considered and decided in other jurisdictions. The following cases present facts similar to those of the case at bar — suit by an employee or his personal representative or subrogation insurer against an insurance company insuring his employer. In Fabricius v. Montgomery Elevator Co., 254 Ia. 1319 (121 NW2d 361, 93 ALR2d 591) (1963), the executrice of the estate of a deceased employee injured in employment sued the employer's compensation insurer on the theory of negligent inspection, and the court held that the trial court correctly denied the insurer's motion to dismiss, upholding plaintiff's position that a common law duty was alleged to have been violated.

In Sheridan v. Aetna Casualty &c. Co., 3 Wash. 2d 423 (100 P2d 1024) (1940) a plaintiff who fell down an elevator shaft sued the insurer of the building owner. The court found that although the policy, which allowed but did not require inspections, imposed no liability for failure to inspect, nonetheless when the insurer undertook to make safety inspections and report to the building department of the city, an action would lie for breach of the duty of care in making the inspections. The verdict for plaintiff was affirmed, the court relying on Van Winkle, supra.

In Nelson v. Union Wire Rope Corp., 31 Ill. 2d 69 (199 NE2d 769) (1964), the Supreme Court of Illinois recognized a common law tort in a general contractor's insurer's negligent performance of a gratuitous undertaking to make safety inspections on construction projects, following which a hoist fell six floors with 19

workmen aboard. The court said (p. 86): "It is axiomatic that every person owes to all others a duty to exercise care to guard against injury which flows as a reasonably probable and foreseeable consequence of his act, and that such duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons. . . [Cits.] Plaintiffs, as workmen on the project, were the chief beneficiaries of the safety inspection and safety engineering services rendered by defendant, and we need not labor the point that defendant could reasonably have expected and foreseen that they would be endangered by its failure to use due care."

American Mut. Liability Ins. Co. v. St. Paul Fire & Marine Ins. Co., 48 Wis. 2d 305 (179 NW2d 864) (1970) involved a claim by the compensation insurer against the boiler insurer for reimbursement for compensation paid following a boiler mishap alleged to have been caused by negligent inspection of the boiler. The court held that the compensation insurer had alleged a common law cause of action against the boiler insurer for the negligent performance of gratuitous inspections.

Against this line of cases recognizing a common law duty to use due care in making safety inspections, stand various cases cited by defendants, including Ulwelling v. Crown Coach Corp., 206 Cal. App. 2d 96 (23 Cal. Rptr. 631) (1962); Viducich v. Greater New York Mut. Ins. Co., 80 N. J. Super. 15 (192 A2d 596) (1963), and Gerace v. Liberty Mut. Ins. Co., 264 FSupp. 95 (D. C. 1966). Ulwelling found no liability on the insurers of a school bus following injury to passengers allegedly caused by want of mechanical inspection; however, that case is inapposite here because it is properly characterized as a case in which no inspection was made, and we are concerned here with allegations of inspections negligently performed. Similarly, Viducich, though it found no liability of the employer's compensation and public liability insurer for work injuries to an employee alleged to have been occasioned by negligent inspections, differs from the case at bar because Viducich, which was heard on the insurance company's appeal from the denial of summary judgment, was decided on the *facts,* which

showed that only one inspection had been made, and that one was incident to the insurance application; there was no reasonable expectation of continuing inspections and no reason for the employer to rely thereupon. In the case at bar, we do not get that far; we are not concerned with what the trial evidence will show. Our only concern is whether a claim for relief has been *alleged,* and on that point Viducich, which favorably cites other common law cases allowing recovery, is support for plaintiff's position rather than for defendants'.

Gerace is more difficult to distinguish. It did not involve a compensation insurer, but a general contractor's liability insurer. The employee of a subcontractor sued for negligent inspection, and the district court granted the insurer's summary judgment motion, writing that "the court is of the opinion that no cause of action exists against an insurance company as a result of the permissive clause giving it authority to inspect the premises of the insured, irrespective of whether the insurance company does or does not take advantage of the provision." 264 FSupp. 98. The court grounded its decision on the dual considerations, first, that the inspection was undertaken for the benefit of the insurer itself to reduce risks producing policy claims, and second that a contrary result might deter safety inspections which should be favored as a matter of public policy. On balance, neither of these considerations seems persuasive to us. The first merely begs the question; the same risks that give rise to liability on the policy are the risks that produce personal injury because the injury yields the liability. On the second point, we cannot recommend negligent safety inspections as better than none at all.

Consideration of the foregoing Georgia authorities supplemented with the experiences and conclusions of other jurisdictions confronting the same issue yields the inescapable conclusion that plaintiff's complaint as amended alleges common law tort action against defendants. A study of the foregoing authorities, and of Restatement, Second, Torts, § 324A, leads to the conclusion that defendants' duty may arise from contract *or* from undertaking actual inspections without contract.

Our next question is whether there is anything in our state workmen's compensation scheme which would oust this liability by providing for an insurer the immunity from suit enjoyed by the employer. We conclude that there is not.

The relevant definition of "Employer" is found in Code Ann. § 114-101 which states in pertinent part, "If the employer is insured, this term shall include his insurer, *as far as applicable.*" (Emphasis supplied.) Though the emphasized phrase is not free from ambiguity, it would have sufficed for the legislature to end the sentence following "insurer" had it wished to equate the two for all purposes of the statute. We conclude now, as we recognized in *Mull v. Aetna Cas. & Sur. Co.,* 120 Ga. App. 791 (172 SE2d 147), cert. dismissed, 226 Ga. 462 (175 SE2d 552), that the *compensation* insurer enjoys the employer's immunity. But today we add to *Mull* the further explanation that other insurers of the employer are not by the Act itself immunized from common law suit as third-party tortfeasors under Code Ann. § 114-103, and, moreover, the compensation insurer itself is not so immunized if it occupies the relation of insurer in any capacity other than compensation insurer. Thus, the compensation carrier here, American Casualty Company, stands in the same position as the other defendants with respect to suit against it arising out of its other insurance policies written on Bio-Lab or inspections made in connection therewith. Neither the Act itself, *Mull,* nor *Southern Wire, Inc. v. Fowler,* 217 Ga. 727 (124 SE2d 738) compels a different result. When defendants ask, as they do here, that plaintiff's common law right of action for negligence be abrogated, they must be prepared to show legislative enactment or other compelling authority for the result desired by them. Here, they have shown none.

A brief survey of the results reached in other jurisdictions is appropriate here, but we precede it with the caveat that these decisions are so interwoven with the phraseology of the applicable state workmen's compensation scheme, and so heavily dependent upon the court's view of the policy issues, that the variety of results obtained may not be logically reconciled here.

Concerning suit against the compensation carrier itself,[7] Fabricius v. Montgomery Elevator Co., 254 Ia. 1319, supra, p. 1326 (1963) affirmed the trial court's denial of the insurer's motion to dismiss, saying "Defendant's citations to the effect that the insurer has the same liability as the employer refer to the insurer's liability under its policy to pay compensation due from the employer to the employee. We do not find any that refer to a tort committed by the insurer, either related or unrelated to the employment or the policy." Smith v. American Employers' Ins. Co. 102 N. H. 530 (163 A2d 564) (1960) was among the first cases on this point, and it allowed a negligence suit against a compensation carrier who additionally issued three other types of policy, holding that under the New Hampshire statute, the carrier was "some person other than the employer." Nelson v. Union Wire Rope Corp., 31 Ill. 2d 69, supra, held that nothing in the Florida Workmen's Compensation Act ousted tort liability of the general contractor's compensation and liability insurer for an alleged gratuitous, negligent safety inspection. Most recently, in Ray v. Transamerica Ins. Co., 10 Mich. App. 55 (158 NW2d 786) (1968), Michigan joined this group of jurisdictions, concluding "that a compensation carrier is not immune from common-law tort liability for its own acts of negligence causing injury to the employee. The compensation insurance carrier may be a third party within the meaning of the Michigan Act." Id., p. 59.

Against these cases, defendants cite Kotarski v. Aetna Casualty & Sur. Co., 244 FSupp. 547 (E.D. Mich., 1965) which refused to allow a third party action against the carrier. However, we may quickly dispose of this case by noting that the district court purported to find and apply Michigan law, and its conclusion was subsequently repudiated by the Michigan court in Ray, supra. In Modjeski v. Atwell, Vogel & Sterling, Inc., 309 FSupp. 119

---

[7] See generally, Annot., Right of Employee to Maintain Common-law Action for Negligence against Workmen's Compensation Insurance Carrier, 93 ALR2d 598 (1964).

(D. Minn. 1969) a wrongful death action against the compensation carrier (who was also a casualty and liability insurer) was ruled invalid and the carrier held not liable on a combination of theories including the theory that the only duty violated was the safe-place duty which was owed by the employer and "the complaint does not allege a violation of any additional duty owed by the insurer to the employee." P. 123.

We will not attempt to canvass all the decisions disallowing tort actions against the compensation carrier. See cases collected, id. p. 123, n. 5. After all, *Mull* has settled the law of our state on this point. But Fabricius, Smith, Nelson, and Ray, all supra, to the extent to which they allow suit against the carrier itself, lead to the conclusion that suit against another insurer (not compensation insurer) of the employer would be allowed in those jurisdictions as a matter of course. Even Gerace v. Liberty Mutual Ins. Co., supra, cited by defendants, "concur[s]" in the conclusion "that the insurance carrier [not the compensation carrier] is a third party." 264 FSupp. 98.

This topic has been addressed in 2 Larson, Workmen's Compensation Law, § 72.90 in which Larson notes that:

"Of all the developments in the volatile field of third-party litigation under workmen's compensation, none has been so dramatic and fast-moving as the line of cases in which injured employees have attempted to treat the compensation carrier as a third party for purposes of tort suits, based usually on alleged negligence in either safety inspections or medical services." (Id., p. 226.28).

"One may begin by identifying two approaches to the question, which might be called the conceptual and the functional.

"The conceptual approach asks: Who *is* the carrier? Is he a third party?

"The functional approach asks: What was the carrier *doing?* And what was the relation of that function to the act?" Id., p. 226.40.

He suggests as his solution that the conceptual approach be abandoned in favor of the functional, and that "a distinction should be drawn between the carrier's

function of *payment* for benefits and services, on the one hand, and on the other, any function it assumes in the way of direct or physical performance of services related to the act. For negligent performance of the latter it should be liable in tort as a 'person other than the employer.'" Id., p. 226.53.

Thus, Larson approves holding the compensation carrier itself to common law tort liability for functions it performs — including safety inspections — other than actual payment of compensation, and undeniably encompassed in this position is the implied conclusion that insurers other than the compensation carrier are third parties in the absence of a statute clearly identifying them with the employer. To the gloomy prediction that insurers threatened with liability for gratuitously undertaken safety inspection will cease making them,[8] and the oft-repeated maxim that policy questions are for the legislature, Larson makes this response: "Sometimes this maxim appears as the last refuge of a cautious court confronted with a hard

---

[8]There has been a recent trend toward holding insurance companies to a higher standard of care than formerly with respect to their dealings with their insureds. See, e.g., Note, Damages for Mental Suffering Caused by Insurers, 48 Notre Dame L. Rev. 1303 (1973). No doubt this trend exists in recognition of the frequent presence of insurance carriers in transactions concerning life's more doleful events. With specific reference to on-the-job injuries, it should be noted that the substantial fines which may be imposed upon employers who violate the requirements of the new Occupational Safety and Health Act of 1970, 29 U.S.C. § 651-78 (1970) may spawn litigation of the employer-versus-insurance company type in instances where the employer in fulfilling his safe-place duties has reasonably relied upon safety inspections by the insurance carrier. In short, we do not feel that today's decision does more than hasten the inevitable moment when insurance carriers must reassess their positions with respect to their safety inspection undertakings.

decision. But here it makes good sense. The issue of public policy is a complex one, and it is by no means limited to workmen's compensation law. The tort issue at stake, whether the performance of volunteered services, in the absence of reliance, can impose liability for negligence in the performance, is in its way as controversial as the compensation law issue here discussed. Probably the reason that Nelson-type decisions have not been even more frequent than they are is the inability of plaintiffs to hurdle the tort issue in states that require a showing of reliance. An adequate legislative solution, then, might have to deal with the tort problem as well as the exclusive-remedy issue." Larson, supra, p. 226.59.

Larson posits that the variety and flux in this area of the law springs from the conflict between two fundamental concepts:

"To summarize the trends in the entire area of law defining 'who are third parties': the reason that lively movements are visible both toward constricting and toward expanding the roster of suable third-party tortfeasors is that two competing fundamental ideas are at work.

"The one is the original idealistic compensation theory that the whole industrial injury problem should be 'swept within' the compensation act.

"The other is the even more ancient principle that common law rights of action shall not be deemed abolished except by clear statutory language." Larson, p. 226.62.

To summarize what we have ruled on this issue, we find that the allegations of the amended petition state a claim for relief against the Enumeration One defendants. We recognize a common law tort duty as applicable to the making of safety inspections by these companies, and we find nothing in our state workmen's compensation scheme nor in our judicial authorities which would insulate these defendants from suit as third-party tortfeasors.[9] With respect to the compensation carrier, American Casualty Company, it occupies the same

---

[9]With respect to policies of liability insurance, defendants cite *Arnold v. Walton,* 205 Ga. 606, to prohibit

position as the other defendants in reference to its policies issued Bio-Lab, Inc. other than the compensation policy. Because the averments of the complaint do not disclose with certainty that plaintiff would not be entitled to relief under any set of facts which could be proved in support of the claim, the motion to dismiss was erroneously granted. *Byrd v. Ford Motor Co.,* 118 Ga. App. 333 (163 SE2d 327); *Gill v. Myrick,* 228 Ga. 253, 259 (185 SE2d 72).

However, it is important to note that this opinion says nothing of the likelihood of plaintiff's success at trial. The evidence presented, not being before the trial court, is not before us, and we necessarily say nothing about what that evidence will show. Whether any or all of these defendants made inspections; whether inspections were contractual or gratuitous; whether they were made for the insurance company's internal rating purposes or for safety or for other purposes; whether the inspections were relied upon either by Bio-Lab, Inc. or by deceased; whether the inspections were actually negligent — all of these points may influence the result in the trial court, and we address none of them. Nor do we predict the situations in which we might uphold or overturn liability of each carrier on a specific set of facts presented on appeal. See generally, Note, 54 Iowa Law Rev. 674 (1969).

### 5. Is Code Ann. § 105-106 a Bar to Plaintiff's Action?

As a further defense to this action, appellees argue that deceased was not in privity with them as to any insurance contracts, and therefore to the extent to which the safety inspections were undertaken pursuant to contract provisions, plaintiff's claim is barred by Code Ann. § 105-106 requiring privity to sue for tort where the duty claimed to be violated was itself the consequence of a contract. The short answer to this argument is that in appropriate circumstances, a duty of care may be called

---

a direct action against a liability insurer; but that case is distinguishable from the case at bar because there the insurance company was not alleged to have breached any duty owed plaintiff, and was not being made a defendant because of its own alleged negligence.

for by contract and may be required by tort law at *the same time,* and where this is true plaintiff requires no privity to maintain a tort action. As we recently wrote in *Orkin Exterminating Co. Inc. v. Stevens,* 130 Ga. App. 363 (203 SE2d 587): "It is axiomatic that a single act or course of conduct may constitute not only a breach of contract but an independent tort as well, if in addition to violating a contract obligation it also violates a duty owed to plaintiff independent of contract to avoid harming him. See, e.g., *E. & M. Construction Co. v. Bob,* 115 Ga. App. 127 (153 SE2d 641); *Rawls Bros. Co. v. Paul,* 115 Ga. App. 731 (155 SE2d 819). Such an independent harm may be found because of the relationship between the parties, or because of defendant's calling or because of the nature of the harm. See e.g., *The City & Suburban R. Co. of Savannah v. Brauss,* 70 Ga. 368 (duty of street railway company not wrongfully to eject passenger); *Floyd v. Morgan,* 106 Ga. App. 332 (127 SE2d 31) (duty not to provide an article represented to be safe and actually defective); *Tapley v. Youmans,* 95 Ga. App. 161 (97 SE2d 365) (relationship of landlord and sharecropper); *Orkin Exterminating Co. v. Wingate,* 84 Ga. App. 750 (67 SE2d 250) (duty not to spray flammable liquid around plaintiff's hot chimney, causing his house to burn, in carrying out an extermination contract); *Moody v. Martin Motor Co.,* 76 Ga. App. 456 (46 SE2d 197) (duty to perform safety-related-auto repairs in non-negligent manner)."

Surely the performance of a safety inspection is an act sufficiently associated with bodily danger to others to call for due care in the performance thereof over and beyond a contract obligation.[10] Indeed, the existence of

---

[10] Because we rule that even those performing inspections pursuant to contract are not exempt from a duty of care, it is not necessary for us to consider and decide defendants' argument that plaintiff's assertion that inspections were gratuitously made independent of contract (as well as being made pursuant to contract) is an unwarranted deduction of fact, which does not have to be admitted when construing the petition in favor of plaintiff, citing Moore's Federal Practice and Procedure, p. 686 (1973 Rev.).

the common law tort action for negligent safety inspections which we discussed extensively above should without more make plain that Code Ann. § 105-106 does not bar plaintiff's tort action here. Needless to say, to the extent to which the inspections were gratuitously undertaken, § 105-106 is totally inapplicable. In short, defendants' assertions that Georgia is a state still requiring privity for tort actions based on defective goods has not been correct since 1968 when the statute was amended to allow direct action against manufacturers. See also *Shell v. Watts,* 125 Ga. App. 542, 544 (188 SE2d 269).

### 6. The Statute of Limitation Question.

Turning to the merits of Enumeration 2, plaintiff argues that where a John Doe complaint authorized by Code Ann. § 81A-110 (a) has been filed against unknown and unserved defendants, the parties desired may be named and served at *any* subsequent time, even after the running of the statute of limitation, provided only that plaintiff has used due diligence in seeking them out.

It is true that where an unidentified party is sued as John Doe *and served* within the limitation period, a later amendment adding his name when he has been identified will relate back. But where no service has been effected on a "John Doe" this proceeding does not apply. Our test then is provided by the Code section urged by defendant — Code Ann. § 81A-115 (c).

All of Code Ann. § 81A-115 (c) after the first sentence is identical to a portion of the 1966 amendment to Fed. R. of Civ. P. 15 (c), and thus commentary on the federal rule is pertinent to our consideration. As an initial matter, because from the viewpoint of the party sought to be added belatedly, it can make no difference whether he was originally designated as John Doe and not served, or originally neither named nor served because another person was erroneously thought to be the correct defendant, we hold that both situations are encompassed by § 81A-115 (c)'s reference to "changing the party against whom a claim is asserted." The remaining provisions of § 81A-115 (c) will govern whether these defendants may, after the running of the statute of

limitation, be brought into this action as defendants by being named and served. Those requirements are that within the limitation period, the party "(1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him." To defendants' contention that this newer portion of the statute was not in existence when the addition of these parties was attempted, we reply that under *Hill v. Willis,* 224 Ga. 263 (161 SE2d 281), we apply procedural law as of the date of our consideration of the appeal.

Wright & Miller state that the newer portion of Rule 15 (c) "is designed to assure that any party who is to be added by amendment after the limitations period has expired had adequate notice of the action and of plaintiff's mistake in failing to name him at the outset. Otherwise, the deprivation of the new party's right to invoke a statute of limitations defense might raise a question of procedural due process." 6 Wright & Miller, Federal Practice and Procedure: Civil § 1498, p. 507 (1971). This position is not inconsistent with the few pronouncements of Georgia courts on this and related points. See *Murray Chevrolet Co. v. Godwin,* 129 Ga. App. 153, 156 (199 SE2d 117). Compare *Chance v. Planters Rural Telephone Cooperative, Inc.,* 219 Ga. 1, 4 (131 SE2d 541) ("the mere filing of the petition will not of itself operate to toll the statute of limitations. For, service is also a vital ingredient.") with *Humble Oil & Refining Co. v. Fulcher,* 128 Ga. App. 606, 609 (197 SE2d 416) ("As the amended complaint was filed within the statutory period the fact of service being perfected upon the added party one day after the two-year period does not bar the amended complaint.").

Moreover, concerning the "notice" which such party must have received, "the Advisory Committee's Note to the 1966 Amendment of Rule 15 (c) indicates that the required 'notice of the institution of the action' may be formal or informal. But how informal the notice may be is somewhat uncertain." Id. Accord, Moore, Federal Practice, Par. 15.15 [4.-2] (1972). See e. g., Williams v. Avis

Transport of Canada, Ltd., 57 FRD 53 (D. Nev. 1972) (attorney's letter to Goodyear constituted notice).

Considering Rule 15 (c) in the context of a "Doe" complaint, the Sixth Circuit ruled, "Nor can the defendants who were added by the amendments be deemed to have been parties to the original complaint under the fictitious designation of 'Does.' The action was never commenced as to the 'Does' because they were not identified nor served with process. The statute of limitation is not tolled in the absence of service of process or otherwise acquiring of jurisdiction." (Citing Michigan authority). Bufalino v. Michigan Bell Tel. Co., 404 F2d 1023, 1028 (6th Cir. 1968), cert. den. 394 U. S. 987.

Similarly, in Craig v. United States, 413 F2d 854 (9th Cir. 1969), the Ninth Circuit ruled that Rule 15 (c) "pertains to the relation back of the pleadings, [and] makes no mention of the pleadings of fictitious parties. It is therefore wholly immaterial, insofar as the application of the rule is concerned, whether fictitious defendants were named prior to the running of the statute." Id., p. 856. The court construed "notice" to mean notice within the statutory period, of the lawsuit, and not merely notice of the incident giving rise to it. In Williams v. Avis Transport of Canada, Ltd., 57 FRD 53, supra, the district court refused to allow substitution of a real party for a "Doe" defendant after the running of the statute under circumstances which did not satisfy Rule 15 (c). Accord, Phillip v. Sam Finley, Inc., 270 FSupp. 292 (W. D. Va. 1967).

Turning to the appeal before us, we find that the first amendment to the complaint substituting named companies for the "Does" in the initial complaint arose out of the conduct, transaction or occurrence set forth in the original pleading; however no party here has called to our attention any evidence in the record that the defendants sought to be added or any of them received notice of the institution of the action or that but for mistake the action would have been brought against it. Plaintiff does not even appear to allege notice, having approached the issue in the trial court entirely from the position that due diligence on its own part in identifying correct defendants was all that was required. The

requisites of Code Ann. § 81A-115 (c) not having been met, the trial court correctly granted summary judgment on the wrongful death count to the Enumeration Two defendants.

7. The Status of Gulf and Aetna.

In drawing her Enumeration 2, urging error in the grant of summary judgment to certain defendants on the statute of limitation point, plaintiff omitted to list Aetna Insurance Company, American International Insurance Company a/k/a and successor to Pacific Insurance Company; American Home Assurance Company, and Gulf Insurance Company. Later, by amendments to the enumeration of errors and notice of appeal, plaintiff sought to add these parties on the ground that their initial omission stemmed solely from clerical error. An affidavit of counsel was submitted in support of this position. This attempted amendment was vigorously opposed by Gulf and Aetna, urging that plaintiff did not appeal the order in its entirety, but appealed the order only as it applied to the listed defendants, and arguing that neither a notice of appeal nor enumeration of error may be amended after the time for filing has passed.

With respect to amending the notice of appeal, Code Ann. § 6-115 states that "the superior court shall *at any time* permit such amendments . . . as may be necessary to cure the defect." (Emphasis supplied.) Rather than dismissing the appeal as to Gulf and Aetna, the statute clearly mandates that the amendment be allowed. Nothing in *Tapley Finance Corp. v. Citizens & Southern Bank of Dublin,* 129 Ga. App. 781 (201 SE2d 482), wherein we wrote "An original notice of appeal may only be amended in order to correct an error in the original" is in conflict with the result reached here.

We reach a similar result allowing the amendment to the enumeration of errors under the authority of Rule 14 (e) of the Supreme Court (227 Ga. 847) and our own Rule 14 (e), (124 Ga. App. 873), both of which state that "The enumeration of errors shall be deemed to include and present for review all judgments necessary for a determination of the errors specified." The obvious purpose of this rule is to eliminate a litigant's

inadvertent forfeiture of substantial rights through some technical error such as we have here, so easily occurring in the listing of numerous corporate entities. The authorities relied upon by Gulf and Aetna, viz., *Arkwright v. State,* 223 Ga. 768 (158 SE2d 370); *Garmany v. Peavy,* 122 Ga. App. 466 (177 SE2d 502); *Smith v. State,* 119 Ga. App. 93 (166 SE2d 394); and *Georgia R. & Banking Co. v. Frazer,* 118 Ga. App. 810 (165 SE2d 607), have been in effect overruled by the rules described above, to the extent to which they conflict with the rules.

The amendments to the notice of appeal and the enumeration of error are allowed.

The order of the trial court dismissing the amended petition as to the Enumeration One defendants is reversed. The order granting summary judgment to the Enumeration Two defendants is affirmed.

*Judgment reversed in part; affirmed in part. Deen and Stolz, JJ., concur.*