Lynda MAULDEN, Plaintiff,

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant.**

Civ. A. No. CV492–95.

United States District Court,
S.D. Georgia,
Savannah Division.

Oct. 9, 1992.

Charles Richard Ashman, Brian Ehrlich Krapf, Keenan Ashman, Jeffrey Wayne Lasky, The Keenan Ashman Firm, Savannah, GA, for plaintiff.

Doris E. Brannon, Arthur Martin Kent, Kent, Williamson & Brannon, Savannah, GA, Lowell S. Fine, Mark E. Bergeson, Alembik, Fine & Callner, Atlanta, GA, for defendants.

## ORDER

ALAIMO, District Judge.

*FACTS*

On February 14, 1990, Plaintiff, Lynda Maulden ("Maulden"), an employee of the Body Shop in the Glynn Place Mall, was injured when a rolling clothing rack was pushed into her chest. She felt pain in her chest and noticed swelling and tenderness in her right breast. She also observed that her breasts looked deformed. At the time of the injury, Maulden had bilateral silicone breast implants in place.

On the day of the injury, Maulden sought treatment at Glynn Immediate Care. The examining physician determined that her right breast implant had either ruptured, or was torn or perforated. She was referred to Dr. J. Andre Renard, in Jacksonville, Flori-

da, and saw him on February 19, 1990. Dr. Renard concluded that Maulden would need surgery on both breasts. Dr. Renard telephoned Defendant, Liberty Mutual Insurance Company ("Liberty Mutual"), in Savannah, Georgia, believing that company to be the carrier for Body Shop's worker's compensation insurance. Dr. Renard spoke with Mr. Robert Hack of Liberty Mutual. Hack told Dr. Renard that a written request, including an explanation and cost of the procedures, needed to be submitted before the treatment could be authorized. Maulden was examined again by Dr. Renard on February 20.

Dr. Renard sent the necessary written explanation and request for the surgery to Hack on February 27, 1990. The letter did not indicate that only one breast was injured, and included the cost for surgery on both breasts. A photograph of Maulden's breasts was included with the letter. Not yet having heard from the insurance company, Maulden called Hack on about the first of March to explain her need for the surgery and claims that she was treated rudely at this time. She claims she was treated rudely on a later occasion as well.

Hack wrote a letter to Dr. Renard, dated March 2, 1990, which questioned the need for a bilateral procedure, as Hack was under the impression that only the right breast was injured. In response, Dr. Renard wrote a letter dated March 5, in which he expressed the opinion that his initial letter should have been sufficient to satisfy the insurance company. He wrote, in part, "I believe that authorization should be given for the bilateral procedure as it is my understanding that the patient was hit on both breasts and the photograph that I submitted to your attention was quite obvious."

Hack responded to this letter on March 14, stating that, as he was not a doctor, "it was not 'quite obvious' that this patient had injured both breasts;" however, with Dr. Renard's explanation, Hack authorized the bilateral surgery which was performed on March 26, 1990.

On or about March 19, and again on March 23, Maulden went to her family doctor, Dr. James Snow. For approximately a week prior to the first visit, Maulden had been experiencing flu-like symptoms, fever, pain in her joints, and muscle soreness. Her breasts were red and were causing pain and discomfort. Maulden had also developed nodules in various parts of her body, including her rib cage, arms, breasts and legs. A biopsy of one of these nodules indicated that it was an inflamed lymph node "with foreign body reaction to an oil like substance." Maulden states that she currently suffers from decreased metabolism, weight gain, rheumatoid arthritic symptoms, memory loss, fatigue, reddening of the skin, dryness of the eyes and throat, and a sleep disorder, all attributed to the silicone leakage.

Maulden alleges that Liberty Mutual's questioning of Dr. Renard's letter of February 27 and the subsequent authorization of surgery without the need to review any additional material exhibit a "wanton, willful and intentional delay" in authorizing the needed surgery, and that this delay contributed to the injuries from which she suffers currently. She states that, at the time of this correspondence, sufficient medical literature existed which documented the danger of silicone leakage, and that Liberty Mutual should have been aware of the need to expedite surgery. In addition, Maulden states that her dealings with Hack exhibited that he was callous, rude, and non-caring. She points out that the wording of Hack's letter of March 15 illustrates the "callousness, snideness and poor attitude displayed by Mr. Hack ..."

## DISCUSSION

The Court need not resolve the issue of whether the insurance company unreasonably delayed surgery. This case is before the Court on a motion for summary judgment by Defendant, Liberty Mutual, in which two defenses are raised. Liberty Mutual states that it is not the proper party to the suit, that Liberty Insurance Company, a subsidiary company, was the carrier of the worker's compensation insurance for the Body Shop. Liberty Mutual also argues that the claim is precluded by the exclusivity of remedy section of Georgia's Workers' Compensation Act, O.C.G.A. § 34-9-11.

### Summary Judgment

Summary judgment requires the movant to establish the absence of genuine issues of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 153, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142 (1970). Summary judgment is also proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The non-moving party to a summary judgment motion need make this showing only after the moving party has satisfied its burden. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991).

The Court should consider the pleadings, depositions and affidavits in the case before reaching its decision, Fed.R.Civ.P. 56(c), and all reasonable inferences will be made in favor of the non-movant. *Adickes,* 398 U.S. at 158–59, 90 S.Ct. at 1608–09.

### Liberty Mutual as a Proper Party

■ Ordinarily, the question of whether two corporate entities are alter egos such that the corporate veil should be pierced is one for the jury. *Florida Shade Tobacco Growers, Inc. v. Duncan,* 150 Ga.App. 34, 35, 256 S.E.2d 644 (1979). However, the issue should not be submitted to the jury when there is no evidence that the subsidiary was "a sham, or that it was used to justify wrong, protect fraud, defend crime, or any other reason which in equity and good conscience would justify the disregard of its separate entity." *Williams Plaza, Inc. v. Sedgefield Sportswear Div. of Blue Bell, Inc.,* 164 Ga. App. 720, 721, 297 S.E.2d 342 (1982) (quoting *Florida Shade Tobacco Growers,* supra).

■ Liberty Mutual shows by affidavit of Richard J. Rotters, Liberty Mutual Claims Manager in Savannah, Georgia, that Liberty Insurance Corporation, a subsidiary, was the worker's compensation carrier for the Body Shop. Therefore, Liberty Mutual argues that it should be entitled to summary judgment.

Maulden states that the corporate veil should be pierced. She claims that she always thought that Hack was affiliated with Liberty Mutual. The letters from Hack do bear the words "Liberty Mutual" next to the corporate logo (bust of statue of liberty), and the words "Liberty Mutual Insurance Group/Boston" at the bottom. Mail was sent to and received by Hack at Liberty Mutual Insurance Co. Although this may not be enough to pierce the corporate veil, there is enough evidence of confusion to survive a motion for summary judgment.

### Exclusivity of Remedy

■ Liberty Mutual claims that Maulden's action is barred, in that the Workers' Compensation Act provides the exclusive remedy for injuries occurring out of and in the course of employment. O.C.G.A. § 34–9–11. *See Freeman v. Ryder Truck Lines, Inc.,* 244 Ga. 80, 82, 259 S.E.2d 36 (1979). Additionally, all limitations of liability extended to an employer also extend to that employers' worker's compensation insurer. *Sims v. American Cas. Co.,* 131 Ga.App. 461, 474, 206 S.E.2d 121 (1974), aff'd *Providence Washington Ins. Co. v. Sims,* 232 Ga. 787, 209 S.E.2d 61 (1974). Maulden argues that, although her initial injury did arise out of her employment, the subject of this suit is the aggravation of that injury, and the new harms caused her by the delay in removing her silicone implants. This Court holds that an action for such an intentional physical aggravation of an injury is not precluded by the provisions of the Georgia's Workers' Compensation Act.

■ Maulden relies upon the case *Jim Walter Homes, Inc. v. Roberts,* 196 Ga.App. 618, 396 S.E.2d 787 (1990) for the proposition that an action for an intentional physical injury resulting from a refusal to authorize necessary treatment is proper. *Id.* at 621, 396 S.E.2d 787. In that case, the plaintiff was injured when necessary medical treatment was denied her. The case before the court involves a physical injury resulting from a *delay* in treatment, but the reasoning is the same. It is true, as Defendant points out, that due to the default of appellants in *Jim Walter,* fault was conceded. This dis-

tinction does not matter. On a motion for summary judgment the Court must construe all inferences in favor of the non-movant. This type of action is not barred; it will be decided later whether Defendant was at fault.

Defendant argues that the case is controlled by *Bright v. Nimmo*, 253 Ga. 378, 320 S.E.2d 365 (1984). That case held that the intentional delay of compensation payments does not give rise to an independent cause of action where penalties for such delays are provided by the act. *Id.* at 381, 320 S.E.2d 365. *Bright* involved an insurance company which delayed paying compensation to the plaintiff, with the result that his home was foreclosed upon. The remedy for the plaintiff in *Bright* was found in O.C.G.A. § 34-9-221(e). That section provides a penalty when income benefits are not paid when due, which was, in fact, the proper remedy for the situation in *Bright.* However, this remedy does not apply to the situation before this Court. Penalties for a worsening in physical condition attributable to delay in treatment are not provided by the act. *Bright* does not control this case. *Aetna Casualty & Surety Co. v. Davis*, 253 Ga. 376, 320 S.E.2d 368 (1984), states that "the act provides a penalty for an insurer's controverting medical payments without reasonable grounds and therefore the employee's use of common law remedies is excluded." However, this case also did not address the issue of whether that remedy was the sole remedy provided by the Act when delay in payment aggravated an existing injury.

*Southwire Co. v. Benefield*, 184 Ga.App. 418, 361 S.E.2d 525 (1987) found that the plaintiff had been intentionally injured by his employer, who did not tell him that he had been exposed to lead poisoning. The court found that the injury resulted from an occupational disease and was, therefore, compensable under the Act. When injuries are compensable under the Act, a worker is barred from pursuing a common law remedy. *Id.* at 419, 361 S.E.2d 525.

## CONCLUSION

Because there is evidence of confusion on the issue of whether Liberty Mutual Insurance Company is the proper party to this suit, and because this Court believes that this action is not precluded by the exclusivity of remedy provisions of the Georgia Workers' Compensation Act, summary judgment is DENIED.

**SO ORDERED.**