37389. UNITED STATES OF AMERICA v. ARETZ et al.

PER CURIAM.

Pursuant to Rule 36 of this court, Code Ann. § 24-3902, the U. S. Court of Appeals for the Fifth Circuit has certified questions arising

in the above-styled case, which is on appeal from the U. S. District Court for the Southern District of Georgia.

The plaintiff Aretz is bringing this suit against the United States government under the Federal Tort Claims Act. 28 USCA § 1346 (b) et seq. The plaintiff is seeking to recover damages for injuries suffered as the result of a massive explosion at a chemical plant owned and operated by Thiokol Chemical Corporation in Woodbine, Georgia. The explosion occurred while Thiokol at its Woodbine Division was engaged in the performance of a military procurement contract entered into between Thiokol and the Department of the Army.

## Course of the Litigation

Originally, suits were brought by and on behalf of various of the injured and deceased employees against the United States and Thiokol jointly. In Massey v. Thiokol Chemical Corp., 368 FSupp. 668 (S.D. Ga. 1973), Thiokol's motion for summary judgment was granted on the ground that Thiokol's employees were covered by workers' compensation insurance. Under Georgia law, the existence of workers' compensation coverage excludes all other remedies against the employer. Code Ann. § 114-103 (Ga. L. 1972, pp. 929, 930); e.g., Allied Chemical Corp. v. Peacock, 151 Ga. App. 278 (259 SE2d 681) (1979).

Thiokol employees then brought suit against the United States government under the Federal Tort Claims Act. This Act waives federal governmental immunity from suit "on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

In their respective suits the Thiokol employees are seeking to hold the government liable for their injuries on the ground that independent acts of negligence chargeable to federal contract procurement officials constituted a proximate cause of the explosion.

The Thiokol employees seek an aggregate amount of $717,526,391 in damages. All of the employees' suits were consolidated for the liability phase of a bifurcated liability-damage trial in federal district court. Following the liability trial, the federal district court issued an opinion in Aretz v. United States, 503 FSupp. 260 (S.D. Ga. 1977), concluding that the United States government is liable to the Thiokol employees under the tort law of Georgia. The plaintiff Aretz' case became the test case in which to conduct a trial on

the question of damages. The other suits have been stayed pending the outcome of this suit, although the other Thiokol employees have joined as appellees in this appeal. At a jury trial, Aretz was awarded $594,272 in damages.

Initially, the judgment was affirmed by a three-judge panel on the Fifth Circuit Court of Appeals. Aretz v. United States, 604 F2d 417 (5th Cir. 1979). However, the Court of Appeals granted the petition for rehearing en banc. Aretz v. United States, 616 F2d 254 (5th Cir. 1980). Subsequently, the Court of Appeals issued an opinion finding that this case involves determinative questions or propositions of law of the State of Georgia on which there appears to be no clear, controlling precedent in the decisions of this court. Aretz v. United States, 635 F2d 485 (5th Cir. 1981). Accordingly, the Court of Appeals has certified these questions of state law to us for instructions concerning them based on the facts found by the federal district court.

*Facts of the Case as Found by the Federal District Court*

Prior to even stating the certified questions, it is necessary to review the facts giving rise to this case. As found by the federal district court, the facts are essentially as follows:

(A)  *Facts:*

In 1969, the United States, through the Department of the Army, Picattiny Arsenal, Dover, New Jersey, entered into a contract with Thiokol under which Thiokol was to manufacture trip flares to be used as an illuminant during nighttime combat in the war in Vietnam. The contract was awarded to Thiokol after Picattiny had issued an Invitation for Bids together with specifications for production of the trip flares. Thiokol was the lowest bidder.

The Department of Defense promulgates a "DOD Contractor's Safety Manual for Ammunition, Explosives, and Related Dangerous Material" (October, 1968), which was incorporated into the Thiokol-Army contract. The DOD manual requires federal contracting officials to include safety clauses in contracts such as this, to conduct safety surveys at contractors' plants so as to ensure compliance with federal safety standards, and to provide contractors with technical safety data.

In addition, the DOD manual contains classifications of explosives and similar dangerous material based on their hazardousness, with varying storage requirements applicable to the items in each classification group. The least hazardous classification is Class 2. Class 2 is a fire hazard, which embraces items that burn vigorously with little or no possibility of extinguishment in a storage situation; explosion of such material will be confined to pressure ruptures of containers and will not produce shock waves or damaging

blast overpressure. Class 7 is the highest hazard classification. It covers Mass Detonating Hazards and embraces materials that will explode virtually instantaneously when subjected to fire or impact; severe structural damage to adjacent objects is caused.

Under the following armed forces procurement regulations, which were incorporated into the Thiokol-Army contract, storage of the illuminant materials in accordance with the DOD classification was established as a minimal requirement on which Thiokol was not entitled to rely in discharging its responsibility for the safety of its employees and others:

"(d) Neither the requirements of this clause nor any act or failure to act by the Government in surveillance or enforcement thereof shall affect or relieve the contractor of responsibility for the safety of his personnel and his property and for the safety of the general public in connection with the performance of this contract, or impose or add to any liability of the Government for such safety. The Contractor is not entitled to rely on the requirements of this clause or any Government surveillance or enforcement thereof, or lack thereof, or granting of any waiver or exemption in accordance with DOD 4145.26M in discharging the Contractor's responsibility." 32 CFR § 7-704.79 (d) (1970 Ed.)

"(f) The requirements of this clause are minimum requirements, the Contractor agrees that he, and not the Government is responsible for the safety of his personnel and property, and that of the general public, in accordance with the performance of this contract, and that he is not entitled to rely on the requirements of this clause, or any government surveillance or enforcement thereof, in discharging his responsibility or to impose liability of any kind on the Government." Id. at Subsection (f).

Under the "card-gap" test employed by the Army at the time the Thiokol-Army contract was let, illuminant material used in pyrotechnics manufacture was classified as a Class 7 explosive if found to have a certain detonative effect. Otherwise, such material was classified as a Class 2 fire hazard only. Under the "card-gap" test, the illuminant material used in the production of the trip flares (a magnesium and sodium nitrate compound) was found not to be detonative. Accordingly, it was classified as a Class 2 fire hazard, although prior to 1967 it had been classified as a Class 7 explosive.

The trip flares were produced in Building M-132 at Thiokol's Woodbine plant. On February 3, 1971, a fire broke out in Building M-132. Feeding on various materials used in production of the trip flares, the fire spread from the assembly line to a cure room where approximately 8,000 pounds of loose illuminant material was being stored. Deflagration of the illuminant material produced a massive

explosion, followed by the appearance of a large fireball at the site of the explosion and a rain of burning debris over a wide area. Building M-132, which was destroyed by the explosion, had been evacuated by the time the explosion occurred. The explosion, nonetheless, killed 29 employees and injured 50 others.

Investigations conducted by Thiokol and the government concluded that there were three major contributing factors to the explosion: (1) inadequate hazard classification of illuminant material; (2) inadequate separation of materials throughout Building M-132; and (3) inadequate fire protection system in Building M-132.

Both the Army and Thiokol knew before the explosion that the illuminant material used in the production of the trip flares was improperly classified as a Class 2 fire hazard. As early as 1968, Thiokol had conducted tests at its Texas and Utah plants, and these tests showed that ignition of the untamped illuminant produced extremely rapid deflagration with explosive effects and a shockwave of devastating proportions. This information was not communicated to the Army. However, tests conducted by the Army and another defense contractor indicated that rapid deflagration of pyrotechnic compositions can result in detonation and explosion. On November 16, 1970, Picattiny reclassified all loose pyrotechnic compositions as Class 7 items. This was done as a precautionary measure until further tests could be run. For some inexplicable reason and contrary to standard operating procedures, the information concerning the change of classification of the illuminant material was not communicated to Thiokol until February 25, 1971, *some three weeks after the explosion.*

(B) *Federal District Court's Findings Concerning These Facts:*
The federal district court found Thiokol to be negligent in its processing and handling of the illuminant materials, in its safety practices, and in its treatment of the illuminant materials as Class 2 items when it was aware of their potentially explosive qualities. But the district court also found that Thiokol's legal status was that of an independent contractor under the Thiokol-Army contract. Therefore, the government is not liable for Thiokol's negligent acts. The general rule on the subject, applicable in Georgia, is that the employer of an independent contractor is not responsible for the contractor's negligent acts. Code § 105-501; *Atlanta & F. R. Co. v. Kimberly,* 87 Ga. 161 (13 SE 277) (1891); *NEDA Const. Co. v. Jenkins,* 137 Ga. App. 344 (3) (223 SE2d 732) (1976).

However, the district court also found the United States to be chargeable with an independent negligent act or omission in its failure to implement the 1970 decision to change the classification of pyrotechnic materials to Class 7. The district court found that if the

change of classification had been communicated to Thiokol, it would have taken action that would have reduced, if not eliminated, the possibility of a major explosion in the cure room of Building M-132. Accordingly, the district court found that the negligence of the United States concurred with that of Thiokol and constituted a proximate cause of the explosion. This renders the United States and Thiokol joint tortfeasors under Georgia law. Our workers' compensation law preserves an employee's cause of action against a third-party tortfeasor. Code Ann. § 114-103; e.g., *Ga. Power Co. v. Diamond,* 130 Ga. App. 268 (2) (202 SE2d 704) (1973). Thus, the district court found the United States to be liable for the plaintiff's injuries.

### Certified Questions and Answers Thereto
#### (A) *Certified Questions:*

The Fifth Circuit has certified the following two questions to us:

1. Did the United States owe a duty of care to employees of Thiokol, either (a) properly to classify the illuminants initially and to inform Thiokol of their proper classification, or (b) to communicate the change in classification to Thiokol?

2. If the answer to either or both parts of Question 1 is affirmative, then accepting the findings of fact made by the trial judge, was it erroneous as a matter of law for him to conclude that the United States' breach of the duty you have defined in answering Question 1 was a proximate cause of the explosion?

#### (B) *Answers to Certified Questions:*

1. It is, of course, the rule that the employer of an independent contractor owes the contractor's employees the ubiquitous duty of not imperiling their lives by his own affirmative acts of negligence. *Huey v. City of Atlanta,* 8 Ga. App. 597 (2) (70 SE 71) (1911); *Johnson v. Western & A. R. Co.,* 4 Ga. App. 131 (3) (60 SE 1023) (1908); 41 AmJur2d 777, Independent Contractors, § 25; 57 CJS 357, Master and Servant, § 586.

2. It is also the general rule that the independent contractor's employer is under no duty to take affirmative steps to guard or protect the contractor's employees against the consequences of the contractor's negligence or to provide for their safety. See Warner v. Synnes, 114 Or. 451 (230 P 362, 44 ALR 904) (1924); 41 AmJur2d 777, supra; 57 CJS 353, 371, Master and Servant, §§ 584, 600. See also Market Ins. Co. v. United States, 415 F2d 459 (5th Cir. 1969); Beason v. United States, 396 F2d 2 (5th Cir. 1968). As stated in Code § 105-501, supra: "The employer generally is not responsible for torts committed by his employee when the latter exercises an independent business, and in it is not subject to the immediate direction and control of the employer."

3. It should be noted, however, that under the statutory law of Georgia, as well as the law of other states, there are recognized exceptions to this general rule. See 57 CJS 357, 371, Master and Servant, §§ 586, 598. In Georgia, these exceptions were first recognized in the case of *Atlanta & F. R. Co. v. Kimberly,* 87 Ga. 161, supra, and later codified in Code Ann. § 105-502:

"The employer is liable for the negligence of the contractor — 1. When the work is wrongful in itself, or, if done in the ordinary manner, would result in a nuisance; or, 2. If, according to previous knowledge and experience, the work to be done is in its nature dangerous to others, however carefully performed; or, 3. If the wrongful act is the violation of a duty imposed by express contract upon the employer; or, 4. If the wrongful act is the violation of a duty imposed by statute; or, 5. If the employer retains the right to direct or control the time and manner of executing the work, or interferes and assumes control, so as to create the relation of master and servant, or so that an injury results which is traceable to his interference; or, 6. If the employer ratifies the unauthorized wrong of the independent contractor."

4. But the federal district court has found that here the evidence is insufficient to bring the United States within any of the conditions of § 105-502 under which an employer becomes liable for the negligence of an independent contractor. 503 FSupp. at p. 299.

(a) In this regard, it is important to note that the Federal Tort Claims Act does not authorize suit against the government on the theory of strict or absolute liability where an ultrahazardous activity is involved; liability must be based on intentionally wrongful or negligent conduct of government employees for which the government would be liable according to state law under the doctrine of respondeat superior. Dalehite v. United States, 346 U. S. 15 (73 SC 956, 97 LE 1427) (1953); Laird v. Nelms, 406 U. S. 797 (92 SC 1899, 32 LE2d 499) (1972). Therefore, the government cannot be held liable under the exception found in Paragraph 2 of § 105-502.

5. However, we agree with the suggestion appearing in *Aretz v. United States: Fifth Circuit Announces Major Development in Georgia Tort Law?,* 31 Mercer Law Rev. 1095 (1980), that *Hardy v. Brooks,* 103 Ga. App. 124 (118 SE2d 492) (1961), constitutes limited common law authority under which the United States can be held liable for the plaintiff's injuries. See also *Sims v. American Cas. Co.,* 131 Ga. App. 461 (206 SE2d 121) (1974), affd. 232 Ga. 787 (209 SE2d 61) (1974). *Seagraves v. ABCO Mfg. Co.,* 118 Ga. App. 414 (164 SE2d 242) (1968); *Capital Auto Co. v. Shinall,* 103 Ga. App. 695 (1) (120 SE2d 351) (1961); *Huey v. City of Atlanta,* 8 Ga. App. 597 (3), supra.

In *Hardy v. Brooks,* supra, defendant Hardy struck and killed a

cow on a public road with his automobile, and the plaintiff Brooks struck the carcass of the cow with his automobile several minutes later. It was held that although Hardy may not have been negligent in striking the cow, he was nonetheless under a duty to remove the cow from the highway or give warning to others of its presence. *Hardy* constitutes authority for the proposition that where one by his own act, although without negligence on his part, creates a dangerous situation, he is under a duty to remove the hazard or give warning of the danger so as to prevent others from being injured where it is reasonably foreseeable that this will occur.

Under the reasoning of *Hardy,* we hold that the United States, after incorporating the DOD classification of the illuminant material into the Thiokol-Army Contract, came under a duty to communicate the change in classification to Thiokol. This duty extended to Thiokol's employees, since the United States could have reasonably expected them to be put in peril by breach of this duty. See generally, *Seagraves v. ABCO Mfg. Co.,* supra. We agree with the federal district court's ruling that the United States could not "contractually divorce itself from any liability for its negligence in relation to the employees of Thiokol . . ." 503 FSupp. at p. 289.

6. We thus answer Question 1 in the following manner.

We conclude that the United States did come under a duty of care to employees of Thiokol properly to classify the illuminant, to inform Thiokol of the proper classification,and to communicate the change in classification to Thiokol. We therefore answer subpart (a) and subpart (b) of Question 1 in the affirmative.

7. We answer Question 2 in the following manner.

Here the federal district court judge has found that if the change in the illuminant classification had been communicated to Thiokol, the Woodbine plant manager would have taken action that in all probability would have avoided the explosion. Accepting this finding of fact made by the trial judge, we cannot hold that it was erroneous as a matter of law for him to conclude that the United States' breach of duty was a proximate cause of the explosion. We therefore answer Question 2 in the negative.

*Certified questions so answered. All the Justices concur, except Jordan, C. J., and Clarke, J., who concur in the judgment only, and Marshall, J., who dissents.*

DECIDED JULY 15, 1981.

*Alice Daniel, Assistant United States Attorney General, Barbara Allen Babcock, Assistant United States Attorney General,*

*Thomas S. Martin, Acting Assistant United States Attorney General, William T. Moore, United States Attorney, Edmund A. Booth, Jr., Assistant United States Attorney, Frank Rosenfeld, Michael Kimmel, James P. Klapps, Neil R. Peterson,* for appellant.

*Brannen, Wessels & Searcy, Frank P. Brannen, Jim Ammerman, James A. Bishop, Andrew A. Taylor, C. Wayne Alford, T. Edward McClamma,* for appellees.

*Joseph Jones, Jr.,* amicus curiae.

MARSHALL, Justice, dissenting.

Although there are facts in this case which make it hard to conclude that the United States should not be held accountable for the plaintiffs' injuries, I think that a dispassionate analysis of the applicable legal principles leads to that conclusion. I, therefore, dissent.

At the outset, it is necessary to recognize that the United States was under no duty to employees of Thiokol initially to include in the Thiokol-Army Contract a hazardous classification of the trip flare illuminants. Nonetheless, there would be authority under such cases as *Seagraves v. ABCO Mfg. Co.,* supra, and *Capital Auto Co. v. Shinall,* supra, for holding the United States liable for failing to communicate the change in classification to Thiokol once the classification system was incorporated into the contract, were it not for the fact that the express terms of this contract established the DOD illuminant classification as a minimal safety requirement only and precluded Thiokol from relying thereon in discharging its safety responsibilities.

Here, the federal district court refused to give effect to these express terms of the contract. The federal district court ruled: "The Government cannot deal Thiokol's employees out by making a rule that their safety was the sole responsibility of the contractor." 503 FSupp. at p. 289. I must disagree with this conclusion, because the law of this state as applied to the particular facts of this case does make the safety of Thiokol's employees the sole responsibility of Thiokol. In other cases, Code Ann. § 105-502 (2) would render the employer of an independent contractor liable for the contractor's negligence where the work to be done constitutes an ultrahazardous activity. However, as noted in the majority opinion, this strict liability for ultrahazardous activity is unavailable under the Federal Tort Claims Act.

It is also difficult for me to conceive how the failure of the United States to inform Thiokol of the change of illuminant classification can be considered the proximate cause of the explosion, since the evidence establishes that the Thiokol executives already knew that

the illuminants were improperly classified as Class 2 fire hazards only. Thus, it can be seen that the real omission for which the United States is being held liable is its failure to have exercised whatever contractual power it had to have Thiokol abate the negligent acts committed by it in its performance of the Thiokol-Army Contract. In my opinion, this imposition of liability is unsustainable in view of the well-established rule that the employer of an independent contractor is not liable for the contractor's negligence. There are exceptions to this rule, but, as the majority recognizes, the federal district court has found that here the evidence is insufficient to bring the United States within any of those exceptions. I respectfully dissent.