Vivian W. GALANTI, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 82–8184.

United States Court of Appeals, Eleventh Circuit.

July 11, 1983.

Rehearing and Rehearing En Banc Denied Sept. 6, 1983.

---

* Circuit Judge Hill did not participate in this decision. Senior Circuit Judge Elbert P. Tuttle has elected to participate in further proceedings in this matter pursuant to 28 U.S.C. § 46(c).

Knox & Zacks, David M. Zacks, Raymond G. Chadwick, Jr., Augusta, Ga., for plaintiff-appellant.

Nina Loree Hunt, Asst. U.S. Atty., Atlanta, Ga., for defendant-appellee.

Before RONEY and HILL, Circuit Judges, and MORGAN, Senior Circuit Judge.

LEWIS R. MORGAN, Senior Circuit Judge:

Vivian W. Galanti, plaintiff-appellant, brought this action against the government in the District Court for the Northern District of Georgia under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), claiming that her husband, Isaac N. Galanti, died as a result of negligence committed by an agent of the Federal Bureau of Investigation (FBI). The district court concluded that no actionable negligence exists under the pertinent facts and granted the government's motion to dismiss for failure to state a claim. We affirm the district court's order for the following reasons.

The facts giving rise to appellant's claim are undisputed.[1] In October of 1978, Isaac N. Galanti and Roger Dean Underhill were shot to death on a secluded tract of undeveloped property in Fulton County, Georgia. Galanti was interested in purchasing the property from Underhill, and the two men were inspecting it at the time of their deaths. Unknown to Galanti, Underhill was a key witness in the government's investigation into the criminal activity of Michael G. Thevis. Thevis, a convicted felon, had escaped from federal custody six months earlier and was still a fugitive at the time of the murders. He was apprehended a month later and eventually convicted in federal court of violating Underhill's civil rights by having him murdered, along with the innocent bystander Galanti, in order to prevent Underhill's testimony in the government's case.

For several months before his death, Underhill traveled a great deal and kept a low profile, although he frequently contacted F.B.I. Agent Paul V. King, Jr. King was in charge of the Thevis investigation and knew that Thevis had made earlier attempts to kill Underhill. King considered Underhill to be in extreme danger at all times. For this reason, the government arranged for Underhill to enter a witness protection program in which Underhill would be given a permanent, new identity with government assistance, but Underhill refused to enter the program until he sold the undeveloped property in Fulton County. He ignored advice to retain a real estate agent and insisted on personally handling the sale of his property. In the week preceding his death, Underhill repeatedly visited the property even though King advised him of the needless danger involved. On the night before the murders, Underhill called and informed King that he would be showing the property the next day to Galanti who had answered a newspaper advertisement. King made no attempt to contact and warn Galanti of the potential danger, nor did he arrange for surveillance of the property. This is the conduct which formed the basis of appellant's suit in the district court. She claimed that King's failure to warn or protect Nicholas Galanti against a specific, foreseeable danger was a negligent act and the proximate cause of her husband's death.[2]

This action was necessarily filed in federal court under the provisions of the FTCA since appellant seeks to hold the government liable for the negligence of its employee, but both parties agree that Georgia law controls the negligence issue. See Johnson v. United States, 576 F.2d 606 (5th Cir.1978), cert. denied 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981). In Georgia there are four essential elements of a negligence action:

(1) A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm;

(2) A breach of this standard;

(3) A legally attributable causal connection between the conduct and the resulting injury; and,

1. Our statement of the facts is taken from a detailed stipulation which the parties prepared and submitted to the district court.

2. Mrs. Galanti also argued below that the government was negligent in allowing Thevis to escape from custody, but the district court concluded that this theory of relief was not properly included in the pleadings and refused to consider it. Appellant does not challenge that decision in this appeal.

(4) Some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.

*Bradley Center v. Wessner,* 250 Ga. 199, 200, 296 S.E.2d 693 (1982). It is the first element with which we are concerned in this appeal. The court below concluded that under no circumstances could appellant establish a legal duty owed by King to Nicholas Galanti, and accordingly granted the government's motion to dismiss for failure to state a claim. Appellant vigorously challenges this conclusion and relies on a large number of state and federal cases, some very recent, in order to support her argument. After a careful review of the various claims and the relevant law, we find that the district court's order must be affirmed.[3]

The general rule in Georgia is that one has no duty to warn or protect another person from a foreseeable risk of harm simply because of one's knowledge of the danger. *See Bradley Center, Inc. v. Wessner,* 250 Ga. 199, 201, 296 S.E.2d 693 (1982); *Thomas v. Williams,* 105 Ga.App. 321, 124 S.E.2d 409 (1962). In other words, the mere foreseeability of injury to another person does not of itself create a duty to act.[4] This rule is not applicable in three distinct factual situations, however, and appellant contends that each of the three exceptions is present here. First, the duty to protect or warn against danger will arise if the defendant has in any way taken an affirmative step to create the danger. In the recent case of *United States v. Aretz,* 248 Ga. 19, 26, 280 S.E.2d 345, 350 (1981), the Georgia Supreme Court held that "where one by his own act, although without negligence on his part, creates a dangerous situation, he is under a duty to remove the hazard or give warning of the danger so as to prevent others from being injured where it is reasonably foreseeable that this will occur." In that case, the United States Army provided one of its contractors with mistaken information concerning the appropriate storage classification of explosive materials. The Army later realized the mistake, but failed to communicate it to the contractor, and the materials exploded causing injury and death to several of the contractor's employees. The Georgia court, upon certification from the Fifth Circuit Court of Appeals, held that the Army's failure to inform the contractor of the change in classification was a breach of duty which arose when the Army mistakenly classified the materials in the first place. The *Aretz* decision relied heavily on an earlier Georgia case, *Hardy v. Brooks,* 103 Ga. App. 124, 118 S.E.2d 492 (1961), where defendant hit and killed a cow without negligence while driving his car on a public road. The Georgia Court of Appeals held that the defendant's act of killing the cow created the duty to act in the face of foreseeable danger to other drivers on the road. Therefore, *Aretz* and *Hardy* stand for the proposition that a duty to warn or protect a third person from danger will arise if the defendant affirmatively contributes to the creation of the danger. *See also Lay v.*

---

**3.** We note that the district court technically erred in granting the government's motion to dismiss for failure to state a claim because in doing so it went beyond the pleadings and considered the factual stipulation of the parties. *Oaxaca v. Roscoe,* 641 F.2d 386 (5th Cir.1981). Appellant has failed to raise this issue on appeal, however, and we do not find it so egregious as to warrant reversal on our own motion. Appellant's briefs on appeal make extensive use of the factual stipulation in support of her arguments, which in our opinion waives any objection, and indeed these same facts would justify the district court's action on a motion for summary judgment. Therefore, the question of whether we treat the factual stipulation as an amendment to the pleadings and thereby remedy the error, or whether we consider the district court's order as a converted motion and order of summary judgment pursuant to Fed.R.Civ.P. 12(c), is unnecessary to decide. *See Concordia v. Bendekovic,* 693 F.2d 1073 (11th Cir.1982). The legal issue central to this appeal would remain the same.

**4.** The Second Restatement of Torts provides the best codification of this common law rule: "The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." Restatement (Second) of Torts § 314 (1965).

*Munford, Inc.,* 235 Ga. 340, 219 S.E.2d 416 (1975). In the present case, FBI Agent King did nothing to create the foreseeable danger. He was merely aware of the risk to Galanti and for whatever reason chose not to act. Georgia law does not hold him legally responsible for knowledge alone.

█ A second exception to the general rule concerns the defendant's failure to properly exercise his ability to control the foreseeably dangerous instrument. The most recent Georgia decision involving this principle is *Bradley Center, Inc. v. Wessner,* 250 Ga. 199, 296 S.E.2d 693 (1982). In that case, a private mental hospital released one of its patients despite its ability to keep the patient confined, and despite its knowledge that the patient might cause harm to a specific third party. Under these facts the Georgia court held that the hospital owed a legal duty to the third party even in the absence of the usual doctor-patient privity. Appellant argues that *Bradley* stands for the proposition that one must always warn or protect a third person from a foreseeable criminal act, but this argument is incorrect. *Bradley,* and other cases like it, hold that the legal duty arises only if the defendant failed to exercise his ability to control the potential criminal. *See, e.g., Johnson v. United States,* 576 F.2d 606 (5th Cir.1978). This is not the situation we are faced with here. Appellant has not alleged, and the relevant facts do not support the theory, that FBI Agent King or his associates had the ability and failed to control Michael Thevis.[5] Thevis was a wanted fugitive beyond King's control during the relevant time period, and thus King had no duty to warn or protect Galanti merely because of the danger posed by Thevis' known criminal intent.

█ Finally, law enforcement officials may have the legal duty to warn or protect against danger if they have voluntarily assumed or incurred that duty to a specific individual. *See, e.g., Swanner v. United States,* 275 F.Supp. 1007 (M.D.Ala.1967), and *Miller v. United States,* 561 F.Supp. 1129 (E.D.Pa. Apr. 15, 1983). However, this

duty, if at all applicable here, would extend only to Roger Dean Underhill, and he repeatedly ignored warnings and refused protection. Appellant cannot cite to any Georgia statute or case which charges law enforcement officials with the duty to warn or protect members of the general public simply upon learning of a possible danger.

We recognize that the result in this case may appear harsh because Galanti's death very likely would have been avoided if King had chosen to act rather than to remain silent. Nonetheless, Georgia law did not impose any legal duty on King to act on behalf of Galanti, and therefore appellant's complaint did not establish a viable claim. For this reason, the order of the district court is

AFFIRMED.