**Flossie Marie MASSEY, et al.,
Plaintiffs-Appellees,**

v.

**UNITED STATES of America,
Defendant-Appellant.**

**No. 83–8505.**

United States Court of Appeals,
Eleventh Circuit.

May 15, 1984.

Edmund A. Booth, Jr., Asst. U.S. Atty., Augusta, Ga., G.R. Smith, Asst. U.S. Atty., Savannah, Ga., for defendant-appellant.

Joseph Jones, Jr., Atlanta, Ga., for Massey, et al.

John S. Kalil, C. Wayne Alford, Jacksonville, Fla., for Roberson, et al.

Jim Ammerman, Marshall, Tex., for plaintiffs-appellees.

Before GODBOLD, Chief Judge, RONEY, Circuit Judge, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This is an appeal from the denial by the trial court of the motion of the United States for summary judgment in a case which had been pending in that court or on appeal since 1971. We affirm that judgment.

Because the trial court's well-reasoned opinion is not published and because the Georgia law has changed once again since it was entered we refrain from affirming

the judgment on the basis of that opinion, a disposition we sometimes make when we have for consideration an opinion as carefully and correctly crafted as the one before us. Nevertheless, we do quote extensively from Judge Edenfield's opinion:

"Eleven years and ten months after the incident giving rise to the above-styled actions, five and one-half years after the entry of judgment of liability against the government in the consolidated cases, two years after the former fifth circuit's remand to this Court for further proceedings pursuant to the appellate court's affirmance of the district court in accordance with the Georgia Supreme Court's ruling on questions certified to it, forty-six days after the appointment of a Special Master to try the damages claims of the plaintiffs and after nine months of additional discovery and preparation for trial or settlement of the damages claims, the government has presented the Court with a motion to dismiss for failure to state a claim or for lack of jurisdiction, or in the alternative, for summary judgment on the issue of liability.

"The government submits that because of a change in controlling law, there is a bar to liability and recovery. Specifically, the government cites recent developments in Georgia workers' compensation law conferring tort immunity upon statutory employers and asserts that the United States is entitled to raise the statutory employer defense at this point in the litigation. The plaintiffs challenge the government's assertion of this shield from liability on both substantive and procedural grounds. The parties' positions will be explored after a description of the history of this case.

"It is not uncommon for the law to change, nor are protracted court proceedings a rarity. In this case, the two have coalesced to form a result disillusioning to laymen and lawyers alike. Enormous resources have been expended; the record is vast; the case, under the style of *Aretz v. United States*, has been reported at various stages no less than eight times since 1973. The plaintiffs decry the unfairness of permitting the government to shield itself from liability years after the determination of liability. No less forcefully the government argues that recovery in these cases would work an injustice. Neither of these contentions adds anything to the ultimate issue facing the Court: a question of law and fact to be decided under legal principles. The Court would be remiss, however, if it did not acknowledge the irony of the situation, *i.e.*, that by mere fortuitousness, two plaintiffs have recovered damages, awards which were upheld on appeal and have now been satisfied, and that after long years, the end of this litigation for a few months in view, has disappeared with the filing of this motion, leaving the litigants and the Court once again at the threshold.

*"History of the Thiokol Cases*

"The facts, as briefly described by Judge Lawrence in the introduction to his opinion containing findings of fact and conclusions of law on the issue of liability, are as follows:

"These Federal Tort Claim actions have resulted from the fire and explosion which occurred at the Woodbine, Georgia plant of Thiokol Chemical Corporation on February 3, 1971.

"Thiokol was engaged in the manufacture, under contract with the Army, of trip flares which were used by the military during the war in Viet Nam as an aid to troops subjected to attack at night. The flares are ignited by pulling the trip or cutting of the trip wire. A bright flame is emitted which lights up a considerable area.

"On February 3, 1971, around 60 employees of Thiokol were working in or near Building M–132 in which the flares were produced. At 10:53 A.M. a fire broke out at the 'first fire' addition station in the facility. The loose illuminant material (magnesium and sodium nitrate) burns at a speed measured in milliseconds and reaches very high temperatures. The fire ran down the ignition pellet assembly line and eventually got into the cure room where 8,000 pounds of

loose illuminants were being cured in trays. Also in the curing room were 56,322 candles containing approximately 0.3 pounds of illuminant each; 18,472 ignition pellets, and 100 pounds of first fire and intermediate mix.

"An enormous pressure built up as the result of the deflagration of the illuminants. The fire culminated in an explosion in the cure room that destroyed the building. Twenty-nine employees lost their lives. More than fifty other employees were injured. The amounts sought by the plaintiffs aggregate $717,-526,391.

"*Aretz et al. v. United States*, 503 F.Supp. 260, 264–65 (S.D.Ga.1977).

"Twenty-five separate suits were brought against the United States by injured employees and representatives of deceased employees under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 *et seq.* Thiokol, which was a named defendant in many of the cases was dismissed after raising the exclusive remedy bar of workers' compensation, Ga.Code Ann. §§ 114–103 [O.C.G.A. § 34–9–11]. *Massey v. Thiokol Chemical Corp.*, 368 F.Supp. 668 (S.D.Ga.1973). The government and the plaintiffs filed a joint motion to consolidate the case for the purpose of discovery and of determination as to liability. The Court granted the motion, ruling that "said cases be consolidated for trial for the purpose of determining the issue of liability" in accordance with Rule 42(a) of the Federal Rules of Civil Procedure. (Order of May 13, 1974). According to Neil R. Peterson, lead trial counsel for the government, the intent was to preserve specific affirmative defenses such as comparative negligence, applicable in various actions for trial of the damages aspect. Apparently, this was the case, since the government raised and the Court addressed specific defenses in the *Aretz* cases when they went to trial on the damages claim. *Aretz v. United States*, 456 F.Supp. 397, 411 (S.D.Ga.1978).

"The consolidated cases went to trial on the liability issue in the summer of 1974. In *Aretz et al. v. United States*, 503 F.Supp. 260 (S.D.Ga.1977), the Court found negligence on the part of the United States in wrongly classifying the illuminant used in the manufacture of the flares and in failing to communicate to Thiokol an upgrading in classification of the material. This negligence, Judge Lawrence held, was the proximate cause, along with the negligence of the joint tort-feasor Thiokol, of the explosion. Judgment was entered in favor of all the plaintiffs and against the United States on the question of liability on June 28, 1977. The government sought certification for interlocutory appeal under 28 U.S.C. § 1292(b). By Order of February 14, 1978, Judge Lawrence declined to certify the judgment for appeal and decided instead to proceed to trial on the damages aspect in the cases of Mr. and Mrs. Thomas F. Aretz, the first cases filed. Thereafter, the government would be able to take a direct appeal. The Court awarded damages to the Aretzes in the amount of $594,-272.50. *Aretz v. United States*, 456 F.Supp. 397 (S.D.Ga.1978). *Aretz* was affirmed, 604 F.2d 417 (5th Cir.1979), then vacated on rehearing *en banc*, 616 F.2d 254 (5th Cir.1980). The questions of the government's duty of care to the Thiokol employees and of proximate causation were certified by the fifth circuit to the Supreme Court of Georgia which found a duty to properly classify the illuminant and to communicate the proper classification to Thiokol and declined to disturb the district court's holding that the breach of this duty was a proximate cause of the explosion. *United States v. Aretz*, 248 Ga. 19, 280 S.E.2d 345 (1981). The fifth circuit adopted the Georgia court's conclusions, reinstated the panel decision, affirmed the district court and remanded to the district court for further proceedings. 660 F.2d 531 (5th Cir. 1981).

"Shortly after remand, the Court was notified that the Solicitor General had decided not to file a petition for writ of certiorari in the *Aretz* cases. The United States Attorney expressed his intention to proceed with discovery and settlement negotiations 'as expeditiously as circumstances will permit in order to seek a final resolution of

these damage claims.' (Letter to Court dated February 2, 1982). In October, 1982, the government reported that discovery had been undertaken but not completed and informed the Court that the Department of Justice was considering whether to file a motion raising the defense of statutory employer-tort immunity. As late as October 8, the government continued to assure the Court that it would complete all discovery and participate in settlement discussions.

"Thereafter, the Court issued an order appointing Michael J. Gannam as Special Master to take and hear evidence on all issues presented in the damage claims. The first meeting of the parties or their attorneys with the Special Master was scheduled on December 6, 1982. At that meeting, a preliminary trial schedule was set and arrangements were made to hold the trials. On December 27, 1982, an order establishing procedure was entered. That same day, the United States filed the motion for summary judgment currently before the Court.

### "The Parties' Contentions

■ "Under the Federal Tort Claims Act, the United States is liable to suit only in the same manner and to the same extent as a private individual in like circumstances under the law of the place where the act or the omission occurred. 28 U.S.C. § 1346(b); *United States v. Orleans*, 425 U.S. 807, 813, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976). The government is likewise entitled to raise all defenses available to a private defendant under state law. The government contends that though the plaintiffs had a state-created right of action at the incipience of this litigation, a change in Georgia law has abrogated the cause of action against the government which now claims the status of "statutory employer" as that term has evolved in Georgia workers' compensation law.

"The portions of the workers' compensation act, O.C.G.A. §§ 34–9–8; 34–9–11; Ga. Code Ann. §§ 114–203; 114–112, on which the government relies are as follows:

"§ 34–9–8:

"(a) A principal, intermediate, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of his subcontractors engaged upon the subject matter of the contract to the same extent as the immediate employer.

"(b) Any principal, intermediate, or subcontractor who shall pay compensation under subsection (a) of this Code section may recover the amount paid from any person who, independently of this Code section, would have been liable to pay compensation to the injured employee or from any intermediate contractor.

"(c) Every claim for compensation under this Code section shall be in the first instance presented to and instituted against the immediate employer, but such proceedings shall not constitute a waiver of the employee's right to recover compensation under this chapter from the principal or intermediate contractor. If such immediate employer is not subject to this chapter by reason of having less than the required number of employees as prescribed in subsection (a) of Code Section 3409–2 and Code Section 34–9–124 does not apply, then such claim may be directly presented to and instituted against the intermediate or principal contractor. However, the collection of full compensation from one employer shall bar recovery by the employee against any others, and the employee shall not collect a total compensation in excess of the amount for which any of the contractors is liable.

"(d) This Code Section shall apply only in cases where the injury occurred on, in, or about the premises on which the principal contractor has undertaken to execute work or which are otherwise under his control or management.

"§ 34–9–11:

"The rights and the remedies granted to an employee by this chapter shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents, or next of kin,

at common law or otherwise, on account of such injury, loss of service, or death; provided, however, that no employee shall be deprived of any right to bring an action against any third-party tort-feasor, other than an employee of the same employer or any person who, pursuant to a contract or agreement with an employer, provides workers' compensation benefits to an injured employee, notwithstanding the fact that no common-law master-servant relationship or contract of employment exists between the injured employee and the person providing the benefits.

"Before 1981, a principal contractor in Georgia could be liable for workers' compensation benefits to injured employees of independent contractors, *American Mutual Liability Ins. Co. v. Fuller*, 123 Ga.App. 585, 181 S.E. 876 (1971), but was not afforded immunity from suit in tort under Ga.Code Ann. § 114–103, O.C.G.A. § 34–9–11. *Bli Construction Co. v. Knowles*, 123 Ga.App. 588, 181 S.E.2d 879 (1971); *Blair v. Smith*, 201 Ga. 747, 41 S.E.2d 133 (1947). That the predicament of the general contractor who hired independent contractors defied the logic of the theory underlying workers' compensation law, *i.e.*, that tort immunity is conferred in exchange for liability for workers' compensation benefits, did not escape the notice of the Georgia courts. *See Bli Construction*, 123 Ga. App. at 589, 181 S.E.2d 879. The anomaly did not exist, however, where the statutory employer actually paid the benefits before being sued by the employee on a common law negligence action. *See Haygood v. Home Transportation Co., Inc.*, 244 Ga. 165, 259 S.E.2d 429 (1979) (Jordan, J., concurring specially, arguing that majority had overruled *Blair v. Smith sub silentio*); *Jackson v. J.B. Rush Construction Co.*, 134 Ga.App. 445, 214 S.E.2d 710 (1975) (no distinction made between independent contractors and non-independent subcontractors). In this regard, it is noteworthy that in both *Bli Construction* and *American Mutual*, the statutory employer was directly responsible for workers' compensation benefits because the subcontractors did not have sufficient employees to come within the provisions of the workers' compensation act, but had not yet paid any benefits. Thus, the distinctions were whether the subcontractors were independent contractors or not and whether the statutory employer had actually paid the benefits before suit was brought or was merely potentially liable because the immediate employer had paid the benefits.

"The Georgia Supreme Court brought symmetry to this area of the law in *Wright Associates, Inc. v. Rieder*, 247 Ga. 496, 277 S.E.2d 41 (1981). The court there held:

"In the case before us, we have the same facts as in *Haygood*, supra, that here the employee recovered workers' compensation benefits not from the statutory employer, Wright Associates, but from his immediate employer, Eastern Steel Erectors. Wright Associates argues that as a statutory employer liable to pay workers' compensation benefits under Code Ann. § 114–112, it should receive the correlative benefit of tort immunity under Code Ann. §§ 114–103, 114–112. We agree and so hold. As one commentator has pointed out in his discussion of statutory employers, "Since the general contractor is thereby, in effect, made the employer for the purpose of the compensation statute, it is obvious that he should enjoy the regular immunity of an employer from third-party suit when the facts are such that he could be made liable for compensation; and the great majority of cases have so held," 2A Larson's, Workmen's Compensation Law, § 72.32 at p. 14–47.

"*Id.* at 499, 277 S.E.2d 41 (footnotes omitted).

"Potential as well as actual liability for workers' compensation benefits to injured employees of independent subcontractors now insulates the statutory employer from tort recoveries. *See generally* Potter, *Workers' Compensation*, 34 Mer.L.Rev. 335–38 (1982)."

.    .    .    .    .

"The government in the Thiokol cases likewise argues that *Wright Associates* is factually indistinguishable and that the benefits of the holding in *Wright Associates* should extend retroactively to it. The contract to manufacture flares for the Army between the government and Thiokol, an independent contractor, *see* 503 F.Supp. at 285, was procured through the Department of the Army. The government contends that it is a 'principal contractor' and that the injury occurred on premises under the control or management of the government. Therefore, the argument goes, the government would have been liable to provide compensation benefits to the injured employees and representatives of the deceased employees had not Thiokol paid them and this being the case, it is entitled to immunity from suit in tort under O.C.G.A. § 34–9–11."

█ The trial court thereafter concluded that it would not attempt to analyze further or decide other complex issues, but that it would base a judgment for the plaintiffs on the single ground: "The government waived its statutory employer defense by failing to timely bring it before the court. It cannot now avail itself of the defense of coverage by the Workers' Compensation Act."

We agree with this conclusion. It would be intolerable for us to hold that after the government and all the parties entered into a solemn agreement to be bound by the holding on liability in the *Aretz* case, the government could unilaterally ignore the stipulation and raise a defense to liability as to the remaining parties.

We would be remiss, however, in our obligation to the parties, if we failed to note a further change in the Georgia law since the trial court's judgment. The vagaries of the Georgia Workers' Compensation "statutory employment" law have now hopefully been stopped. What the trial judge here thought might, if not waived, give the United States immunity has again been considered by the Georgia Supreme Court in *Manning v. Georgia Power Co.*, 252 Ga. 404, 314 S.E.2d 432 (Ga.S.Ct., 1984).

There the Georgia court construed the language "a principal, intermediate, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of the subcontractors engaged upon the subject matter of the contract to the same extent as the immediate employer . . ." The court said:

In *Evans v. Hawkins*, 114 Ga.App. 120 (150 SE 2d 324) (1966), it was established that "principal" in paragraph (a) meant "principal contractor," just as in paragraph (d), and not a *principal party to whom an obligation to perform work is owed. Thus a property owner, although he may be a "principal," is not a principal contractor* within the meaning of this section *and is not a statutory employer* who is liable for workers' compensation benefits or immune to tort liability by reason of the exclusive remedy provision of the Act, OCGA § 34–9–11. The Court of Appeals apparently lost track of *Evans* however, in deciding *Godbee v. Western Electric Co.*, 161 Ga. App. 731 (288 SE 2d 881) (1982). *Godbee* ignored *Evans* and announced the rule that OCGA § 34–9–6(a) pertains to *any* employer who hires another to perform work, regardless of whether he is an owner rather than a contractor. Nevertheless, the error in *Godbee*, and the failure to account for *Evans*, was remedied in *Modlin v. Black & Decker*, Court of Appeals case no. 67781 (decided March 5, 1984), wherein *Godbee* was expressly overruled and the reasoning of *Evans* revived. "*Owners or entities merely in possession or control of the premises* would not be subject to workers' compensation liability as statutory employees, except in the isolated situation where the party also serves as a contractor for yet another entity and hires another contractor to perform the work on the premises." Id. at 6. We agree with and adopt this analysis of the intent and meaning of OCGA § 34–9–8(a) as to the statutory employer doctrine.

Applying the precepts of *Modlin* to the present case it is clear that we must

reverse. Georgia Power is an owner (and is not acting as a contractor), on whose property Manning was injured. The Act does not make Georgia Power liable for workers' compensation benefits in such circumstances, nor does it immunize Georgia Power from potential liability in tort. Therefore it was error for the Court of Appeals to hold that Georgia Power Company was a statutory employer of Manning and immune to tort liability.

*Manning v. Georgia Power Co., et al.*, 252 Ga. 404, 314 S.E.2d 432 (Ga.S.Ct., 1984) (emphasis added.)

We do not attempt to decide what might be the proper application of *Manning* to this case. Since we approve the judgment of the trial court on the basis of the government's having waived the defense of immunity under O.C.G.A. § 34–9–8, we do not reach this issue.

The judgment is AFFIRMED.

Because of the inordinate delay in this case, it is ORDERED that this judgment be issued in manuscript form.