**INSURANCE COMPANY OF NORTH AMERICA and Liberty Mutual Insurance Co., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 85–366–3–MAC (WDO).

United States District Court,
M.D. Georgia,
Macon Div.

Sept. 9, 1986.

Ben L. Weinberg, Jr., H. Sanders Carter, Jr., Atlanta, Ga., for plaintiffs.

Frank L. Butler, III, Macon, Ga., for defendant.

ORDER

OWENS, Chief Judge.

The plaintiffs in this case, Insurance Company of North America (ICNA) and Liberty Mutual Insurance Company (LMIC), have filed this action against the United States government seeking indemnity/contribution for payments it made to an employee of the United States government. The employee had been injured while working at Robins Air Force Base. Jurisdiction is based upon the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671–80 (West 1976). The United States government made a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. This

court then gave reasonable time for the parties to present all material pertinent to such a motion. Since these materials will be used in making a decision in this case, defendant's motion will be treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R.Civ.P. 12(b) and (c). The parties were so notified.

Courts may grant motions for summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the burden of demonstrating that no genuine issue of material fact exists in the case. When determining whether this burden is met, courts should review the evidence and all factual inferences in the light most favorable to the party opposing the motion. *See Clemons v. Dougherty County, Georgia,* 684 F.2d 1365, 1368–69 (11th Cir.1982).

The facts of this case are relatively uncontroverted. On November 10, 1980, Wade R. Stroud, Jr., a civilian aircraft maintenance worker employed by the Air Force at Robins Air Force Base, was injured when he fell from a maintenance work stand positioned at the tail section of a C–141 aircraft. Mr. Stroud later died from the injuries he sustained in this fall.

Mr. Stroud's survivors subsequently filed suit against R & D Constructors, Inc. (R&D), manufacturers of the work stand, and Pope Maintenance Corporation (Pope), the corporation hired by the Air Force to maintain the work stand. Plaintiffs LMIC and ICNA insured R & D and Pope from the claims of Mr. Stroud's survivors. LMIC and ICNA ended up settling the claims of Mr. Stroud's survivors by paying $351,689.93 to them. LMIC and ICNA were thereby subrogated to the rights of R & D and Pope, and accordingly, brought this action against the United States

government for indemnity/contribution alleging that the United States had been negligent in inspecting and maintaining the work platform and that such negligence proximately caused Mr. Stroud's death.

Mr. Stroud's survivors were also paid $77,569.99 in benefits under the Federal Employees Compensation Act (FECA).[1] Following the settlement of the claims against R & D and Pope with Mr. Stroud's survivors, the federal government suspended, effective March 13, 1985, payments under FECA, and made a demand for a refund of a portion of the $77,569.99 that it had previously awarded, pursuant to its authority under 5 U.S.C.A. §§ 8131–32.[2] The specific amount the United States is seeking from Mr. Stroud's survivors is still being negotiated.

### Conclusions of Law

■ The critical issue in deciding this summary judgment motion is whether and to what extent the United States government has waived its defense of sovereign immunity to allow plaintiffs to seek contribution or indemnity for a claim they paid to an employee of the federal government. The United States has, in fact, waived the defense of sovereign immunity to some extent by enacting the Federal Tort Claims Act.[3] By virtue of this Act, the United States is liable in the same manner and to the same extent as a private individual under like circumstances. *See Scheib v. Florida Sanitarium and Benevolent Association,* 759 F.2d 859 (11th Cir.1985). The Federal Tort Claims Act, therefore, requires this court to determine the status of an analogous private individual, carrying on the same type of function that the government was involved in, and then to determine whether this fictional private individual would be subject to suit under state substantive law. In other words, state substantive law provides the cause of

---

1. *See* 5 U.S.C.A. §§ 8101–93 (West 1980).

2. These sections give the federal government the right to recover payments made to an employee under FECA when someone other than the United States is found to be legally liable for the

same injury for which the employee was compensated by the government.

3. 28 U.S.C.A. §§ 1346(b), 2674 (West 1976).

action and the federal government, in its assumed role of a private entity, is subject to the liability and immunity offered by state law. *See United States v. Yellow Cab Co.*, 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523 (1951); *Certain Underwriters at Lloyd's v. United States*, 511 F.2d 159 (5th Cir.1975); and *United States Lines, Inc. v. United States*, 470 F.2d 487 (5th Cir.1972). Since the injury occurred in Georgia, Georgia state substantive law controls. *See Sargent Industries v. Delta Air Lines, Inc.*, 251 Ga. 91, 94, 303 S.E.2d 108, 110 (1983).

Under Georgia law a private employer is subject to the requirements of the worker's compensation statute unless he falls within one of the statutory exemptions. An "employer" subject to the Georgia Worker's Compensation Act is defined as " ... any individual, firm, association, or public or private corporation engaged in any business, except as hereinafter provided...." *See* O.C.G.A. § 34–9–1(3) (1982 & Supp. 1986). The relevant exemptions for employers not covered by the Act are found in § 34–9–2(a), (b) (1982 & Supp.1986), which reads in pertinent part:

(a) This chapter shall not apply to common carriers by railroad engaged in intrastate trade or commerce; nor shall this chapter be construed to lessen the liability of such common carriers or take away or diminish any right that any employee of such common carrier or, in case of his death, the personal representative of such employee may have under the laws of this state; nor shall this chapter apply to employees whose employment is not in the usual course of trade, business, occupation, or profession of the employer or not incidental thereto; nor to farm laborers or domestic servants; nor to employers of such employees; nor to any person, firm or private corporation, including any public service corporation, that has regularly in service less than three employees in the same business within this state, unless such employees and their employers voluntarily elect to be bound; nor to any person performing services as a licensed real estate salesperson or associate broker who has a written contract of employment providing that he or she shall perform all services as an independent contractor.

(b) This chapter shall not apply to any common carrier by railroad engaging in commerce between any of the several states or territories or between the District of Columbia and any of the states or territories and any foreign nation or nations, nor to any person suffering injury or death while he is employed by such carrier in such commerce; nor shall this chapter be construed to lessen the liability of such common carrier or to diminish or take away in any respect any right that any person so employed or the personal representative, kindred, relation, or dependent of such person may have under the act of Congress approved April 22, 1908, relating to the liability of common carriers by railroad to their employees in certain cases.

Given this law, the next step is to determine whether the United States Air Force, as a fictional private employer, would be covered by the Georgia Worker's Compensation Act. There is no statutory exemption for employers that utilize airplanes as part of their business, and, therefore, it appears clear that Mr. Stroud would be an employee entitled to the protection of the Georgia Worker's Compensation Act if the United States Air Force had, in fact, been a private employer. Furthermore, Mr. Stroud's job of repairing airplanes would be "employment in the usual course of trade, business, occupation, or profession" of such an employer, thus meeting the requirements of an "employee" covered by the Act. *See* O.C.G.A. § 34–9–1(2) (1982 & Supp. 1986). Finally, while plaintiffs seem to contend that Mr. Stroud's injury did not occur in the "course of the employment" with the United States Air Force, it has presented no facts that would demonstrate otherwise.[4] Since they have presented no

---

4. The Georgia Worker's Compensation Act excludes from its coverage injuries not "arising

evidence on this matter, and defendant has presented evidence showing that the injury could only have occurred in the course of the employment, this court must conclude that the injury occurred in the course of the employment.[5] *See Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (U.S.1986). For these reasons, this court finds unavoidable the conclusion that Mr. Stroud's injury would have been covered by the Georgia Worker's Compensation Act had the United States Air Force been a private entity.[6] The next issue then becomes whether, under Georgia law, an employer that paid compensation benefits to its employee, but who is later entitled to be indemnified as to those payments, would be able to assert the protection afforded under the Worker's Compensation Act, namely, immunity from suit in tort as a result of those injuries, against third-party tortfeasors that were held liable to the employee in tort and who now seek contribution/indemnity from the employer for its alleged tortious conduct.

It is absolutely clear under Georgia law that an employer is immune from third-party tort actions for contribution/indemnity where worker's compensation benefits have been paid by the employer to the injured party. *See United States v. Aretz*, 248 Ga. 19, 280 S.E.2d 345 (1981); *Sargent Industries, Inc.*, 251 Ga. at 92, 303 S.E.2d at 109; and O.C.G.A. § 34–9–11 (1982 & Supp. 1986). Plaintiffs contend, however, that because the United States can recover payments made to the injured employee under FECA, should the employee recover from a third-party that was also legally responsible for the injury, the United States has not given the requisite *quid pro quo* which

Georgia law requires before it will confer on the employer statutory immunity. *See Cleveland Electrical Constructors, Inc. v. Craven*, 167 Ga.App. 274, 306 S.E.2d 364 (1983). Plaintiffs argue that private employers covered by the Georgia Worker's Compensation Act are not entitled to such subrogation, and, therefore, this court should not find defendant immune to suit like other private employers, because this right to subrogation vitiates the necessary consideration required for immunity. This argument is unpersuasive, however, and for the following reasons this court finds that the United States government is immune to suit for contribution/indemnity by reason of the Georgia Worker's Compensation Act.

■ The main contention of the plaintiffs is that because the United States can recover FECA payments made to Mr. Stroud's survivors, it has essentially given nothing up for the right to be immune from suit. This argument overlooks the fact, however, that the United States government paid Mr. Stroud's survivors benefits without regard to whether it was negligent in causing the injury. Furthermore, the United States paid these benefits not knowing whether they would ever be able to recover these payments from some other tortfeasor in the future. Under Georgia law, such has been found to be adequate consideration to allow for the statutory immunity to be imposed.

In *Wright Associates v. Rieder*, 247 Ga. 496, 277 S.E.2d 41 (1981), the Georgia Supreme Court dealt with exactly this same argument and found that the right to indemnification for benefits paid, whether

---

out of and in the course of the employment." *See* O.C.G.A. §§ 34–9–1(4) (1982 & Supp.1986). If not covered by the Act, the United States Air Force would then not be entitled to the statutory immunity provided to employers under the Act.

**5.** This court further supports this conclusion by the fact that the Secretary of Labor has already conclusively determined that this injury occurred in the course of the employment when it paid FECA benefits to Mr. Stroud's survivors. *See Heilman v. United States*, 731 F.2d 1104 (3rd Cir.1984).

**6.** *See Scheib*, 759 F.2d at 864 and cases cited therein holding that the government should be entitled to the benefits of the state worker's compensation scheme even though the government did not and could not be required to meet the statutory definition of an employer under state law as long as it appears that the government would have been a statutory employer if it had, in fact, been a private person.

statutory or contractual, did not destroy an employers immunity under the Worker's Compensation Act. In *Wright Associates* an employee had recovered worker's compensation benefits from his immediate employer, Eastern Steel Erectors, Inc., who was an independent subcontractor of the general contractor, Wright Associates. The employee then sued the general contractor. Under Georgia law, the general contractor is considered to be a statutory employer of the subcontractor's employee, and potentially could be liable to the employee for worker's compensation benefits.[7] If the general contractor pays the benefits to the employee, he may, in turn, be entitled to indemnification from the subcontractor. In *Wright Associates,* the plaintiff argued that the general contractors ability to be indemnified for any benefits it paid on behalf of the subcontractor prevented it from enjoying the immunity conferred on the person ultimately liable. The court found, however, that the potential liability of the general contractor, regardless of whether he could recover through indemnification, was sufficient *quid pro quo* to warrant immunity from tort liability. 247 Ga. at 499–500, 277 S.E.2d at 43–44. *See generally Massey v. United States,* 733 F.2d 760, 764 (11th Cir.1984). The decision in *Wright Associates,* therefore, creates the inescapable conclusion that the ability to be indemnified for its FECA payments does not prevent this court from finding that the United States has adequately provided the *quid pro quo* necessary to allow it to assert the worker's compensation immunity defense.

■ Plaintiffs further contend that state law would prevent the United States from seeking subrogation if they were a private employer, and, therefore, since it is demanding reimbursement for its FECA payments, it cannot also seek the protection of the Worker's Compensation Act, which would not allow for such a claim. While it is true that generally a private employer in Georgia who pays worker's compensation benefits to an employee cannot later recover from that employee benefits paid should the employee subsequently recover from a tortfeasor for the same injury, this is not an absolute rule. *See Aetna Insurance Company v. Windsor,* 133 Ga.App. 159, 210 S.E.2d 373 (1974) (holding that the right to subrogation generally ceased to exist after the repeal of Ga.Code Ann. § 114–403 in 1972). On the contrary, state law recognizes the employer's right to subrogation whenever statutory authority for such a right exists. The repeal of Georgia Code Annotated § 114–403 merely removed one source of this authority. Defendant, however, has available to it another recognized source of statutory authority under state law.

In the recent case of *Liberty Mutual Insurance Company v. Georgia Ports Authority,* 155 Ga.App. 940, 274 S.E.2d 52 (1980), the Georgia Court of Appeals held that the right to any subrogation claim which an employer may have under the

---

7.  O.C.G.A. § 34–9–8 (1982) reads:

    (a) A principal, intermediate, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of his subcontractors engaged upon the subject matter of the contract to the same extent as the immediate employer.

    (b) Any principal, intermediate, or subcontractor who shall pay compensation under subsection (a) of this Code section may recover the amount paid from any person who, independently of this Code section, would have been liable to pay compensation to the injured employee or from any intermediate contractor.

    (c) Every claim for compensation under this Code section shall be in the first instance presented to and instituted against the immediate employer, but such proceedings shall not constitute a waiver of the employee's right to recover compensation under this chapter from the principal or intermediate contractor. If such immediate employer is not subject to this chapter by reason of having less than the required number of employees as prescribed in subsection (a) of Code Section 34–9–2 and Code Section 34–9–124 does not apply, then such claim may be directly presented to and instituted against the intermediate or principal contractor. However, the collection of full compensation from one employer shall bar recovery by the employee against any others, and the employee shall not collect a total compensation in excess of the amount for which any of the contractors is liable.

Georgia Worker's Compensation Act against a third-party tortfeasor, who has caused the death or disability of an employee, arises solely by operation of statute. The plaintiff in *Liberty Mutual Insurance Company* had provided benefits to the widow of a deceased employee pursuant to the Longshoremen's and Harbor Worker's Compensation Act.[8] It sought to recover the benefits it had paid to the widow by way of an action against the third-party tortfeasor. While there was a federal statute that afforded such a right to employers that paid worker's compensation benefits pursuant to the Longshoremen's and Harbor Workers' Compensation Act, which, in turn, would afford a right to the employer's insurer if it paid those benefits for the employer, plaintiff had not complied with the requirements of the subrogation statute.[9] The Court of Appeals went on to find that there was no other statutory authority to allow for such a right under state law, and because the right to subrogation must arise from statute, the court denied the plaintiff's claim.

The decision in *Liberty Mutual Insurance Company* is relevant to the case at bar, however, because it demonstrates that rights under the Georgia Worker's Compensation Act are not exclusive but, in fact, must be supplemented by consistent federal and state legislation not found specifically under that Act's provisions. In other words, while the Georgia Worker's Compensation Act generally does not allow for an employer to be able to seek recoupment from third-party tortfeasors the benefits it was required to pay, if there exists statutory authority for such a right elsewhere, state law recognizes this right. In fact, if the plaintiff in *Liberty Mutual Insurance Company* had complied with the requirements for subrogation under the federal statute, the Georgia Court of Appeals would have had to enforce that right even though such rights were generally removed by the repeal of Georgia Code Annotated § 114–403 in 1972. In the case at bar,

there is an express federal statute creating a right to subrogation. State law recognizes the ability of the federal government to create that right, and further, it recognizes that the existence of that right is not inconsistent with the Worker's Compensation Act's grant of immunity to employers.

Accordingly, this court finds that it is consistent with the Georgia Worker's Compensation Act that the United States be entitled to the immunity afforded employers under that Act, while at the same time allowing the United States to seek subrogation under the authority of 5 U.S.C.A. §§ 8131–32. Therefore, since plaintiffs have not demonstrated any reason why this court should not find the United States immune from suit under the Georgia Worker's Compensation Act, summary judgment is hereby granted to the United States for that reason.